Case No. 23-5257

# In the United States Court of Appeals for the Sixth Circuit

SAMUEL JOHNSON, *et al.*,
*Plaintiffs-Appellants*,

v.

KATHY GRIFFIN,
*Defendant-Appellee*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
HONORABLE WILLIAM L. CAMPBELL, JR.,
DISTRICT JUDGE, PRESIDING
Originating Case No. 3:22-CV-00295

**BRIEF OF PLAINTIFFS-APPELLANTS
ORAL ARGUMENT REQUESTED**

Lyndsay C. Smith, Esq.
SMITH, PLC
311 22nd Avenue North
Nashville, Tennessee 37203
Phone: (615) 351-2442
Fax: (615) 866-9863
lsmith@smith-plc.com

Todd V. McMurtry, Esq.
J. Will Huber, Esq.
HEMMER DEFRANK WESSELS, PLLC
250 Grandview Drive, Suite 500
Fort Mitchell, Kentucky 41017
Phone: (859) 344-1188
Fax: (859) 578-3869
tmcmurtry@hemmerlaw.com
whuber@hemmerlaw.com

*Attorneys for Plaintiffs-Appellants Samuel Johnson and Jill Johnson*

## CORPORATE DISCLOSURE

Pursuant to Fed. R. App. P. 26.1 and 6 Cir. R. 26.1, Plaintiffs-Appellants Samuel Johnson and Jill Johnson make the following disclosures:

1.      Is said party a subsidiary or affiliate of a publicly owned corporation? If yes, list below the identify of the parent corporation or affiliate and the relationship between it and the named party.  **ANSWER:  No.**

2.      Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest.  **ANSWER:  No.**

# TABLE OF CONTENTS

CORPORATE DISCLOSURE ...................................................................i

TABLE OF CONTENTS.......................................................................ii

TABLE OF AUTHORITIES ..................................................................iii

STATEMENT IN SUPPORT OF ORAL ARGUMENT ...........................1

STATEMENT OF JURISDICTION........................................................1

STATEMENT OF ISSUES ....................................................................2

STATEMENT OF THE CASE.................................................................3

    I.    Facts Relevant to Issues Submitted for Review ..................3

        A.    The Underlying Incident ............................................3

        B.    Griffin's Involvement ...............................................5

    II.    Relevant Procedural History .............................................9

    III.    Rulings Presented For Review ........................................10

SUMMARY OF ARGUMENT ..............................................................10

STANDARD OF REVIEW ...................................................................11

ARGUMENT .......................................................................................12

    I.    The Requirements of Due Process ......................................12

    II.    The District Court Misapplied the Law .............................12

        A.    Defendant "Specifically Directed" Her Tortious Conduct at the State of Tennessee.....................................................................13

        B.    Defendant "Specifically Directed" Her Tortious Conduct at the Johnsons ..............................................................................14

        C.    Defendant "Specifically Directed" Her Conduct at Tennesseans In Particular...........................................................................16

    III.    The District Court Misconstrued or Ignored Relevant Judicial Precedent ........................................................................19

        A.    Walden v. Fiore, 571 U.S. 277 (2014).....................................19

        B.    Blessing v. Chandreskhar, 988 F.3d 889 (6th Cir. 2021) .........21

        C.    Calder v. Jones, 465 U.S. 783 (1984) .....................................23

CONCLUSION ....................................................................................24

CERTIFICATE OF COMPLIANCE......................................................26

CERTIFICATE OF SERVICE ..............................................................27

ADDENDUM

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................18

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................18

*Blessing v. Chandrasekhar*,
    988 F.3d 889 (6th Cir. 2021) .......................................... 13, 21-23

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)......................................................................20

*Calder v. Jones*,
    465 U.S. 783 (1984)........................................ 12, 20, 23-24

*Compuserve, Inc. v. Patterson*,
    89 F.3d 1257 (6th Cir. 1996) ...................................................11

*Dean v. Motel 6 Operating L.P.*,
    134 F.3d 1269 (6th Cir. 1998) ...........................................11, 18

*Hanson v. Denckla*,
    357 U.S. 235 (1958)......................................................................14

*Hotel Employees & Rest. Employees Union, Local 100 of New York, N.Y. &*
*Vicinity, AFL-CIO v. City of New York Dep't of Parks & Recreation*,
    311 F.3d 534 (2d Cir. 2002)......................................................18

*In re Indian Palms Assoc. Ltd.*,
    61 F.3d 197 (3d Cir. 1995) .......................................................19

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945)............................................................. 11-12

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984)............................................................. 20-21

*Malone v. Stanley Black & Decker, Inc.*,
    965 F.3d 499 (6th Cir. 2020) ...................................................12

*Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd*,
    91 F.3d 790 (6th Cir. 1996) .....................................................11

*Parker v. Winwood*,
    938 F.3d 833 (6th Cir. 2019) ........................................................12

*Preferred Capital, Inc. v. Assocs. in Urology*,
    453 F.3d 718 (6th Cir. 2006) ........................................................11

*Walden v. Fiore*,
    571 U.S. 277 (2014).................................................12-16, 19-24

*Welsh v. Gibbs*,
    631 F.2d 436 (6th Cir. 1980) ........................................................11

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)........................................................14

**Statutes, Rules and Regulations**                                    **Page(s)**

28 U.S.C. § 1291 ..........................................................................1

28 U.S.C. § 1332 ..........................................................................1

6 Cir. R. 26.1 ...............................................................................i

6 Cir. R. 32 ................................................................................26

6 Cir. R. 34 .................................................................................1

Fed. R. App. P. 26.1 .......................................................................i

Fed. R. App. P. 32 .......................................................................26

Fed. R. App. P. 34 .........................................................................1

Fed. R. Civ. P. 4 .........................................................................12

Fed. R. Civ. P. 8 .........................................................................18

Fed. R. Evid. 201 ........................................................................18

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Pursuant to Fed. R. App. P. 34(a) and 6 Cir. R. 34(a), Plaintiffs-Appellants hereby respectfully request oral argument. This appeal raises important issues relating to personal jurisdiction in internet-contacts cases.

## STATEMENT OF JURISDICTION

The District Court had subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332. The Court of Appeals has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1291. On March 3, 2023, the District Court issued a final order granting Defendant-Appellee's motion to dismiss and dismissing all claims. (RE 32, 33). On March 28, 2023, Plaintiffs-Appellants filed in the District Court case a timely notice of appeal. (RE 34).

## STATEMENT OF ISSUES

1.    Did Defendant-Appellee Griffin establish sufficient contacts with the forum state to render personal jurisdiction compatible with the Due Process Clause of the United States Constitution?

2.    Did the District Court refer to the correct legal standard in granting Defendant-Appellee Griffin's Motion to Dismiss for Lack of Personal Jurisdiction?

## STATEMENT OF THE CASE

### I.    Facts Relevant to Issues Submitted for Review

#### A.    The Underlying Incident

On the evening of April 24, 2021, Samuel Johnson ("Mr. Johnson"), a well-respected member of the local business community and chief executive officer of WeCounsel Solutions, LLC, d/b/a VisuWell, was enjoying a quiet dinner with family members at the Harpeth Hotel in Franklin, Tennessee. (RE 1, Compl., Page ID# 3-4, 9-10). Their meal, and that of others at the restaurant, was interrupted repeatedly by the loud, profane, and sexually vulgar antics of a group of young adults gathering to attend a prom later that evening. (*Id.* at Page ID# 10-11). The prom, however, was not being held at the Harpeth Hotel. (*Id.*). Like the other restaurant patrons, Mr. Johnson was disturbed by the incivility. (*Id.*). The hotel staff did not intervene, and no one admonished the misbehaving young adults. (*Id.*).

At one point during the meal, Mr. Johnson rose to use the restroom. (*Id.* at Page ID# 11). His path took him near the prom group. (*Id.* at Page ID# 11-12). On his return trip, he walked past someone who appeared to be the prom group's adult chaperone. (*Id.* at Page ID# 12). Despite his polite request that she ask the prom goers to "tone it down a bit," the chaperone dismissed him with a wave of her hand. (*Id.*). Two members of the prom group, including a young man wearing a bright red prom dress and his boyfriend, overheard Mr. Johnson's request to the chaperone.

3

(*Id.* at Page ID# 12-13). They verbally confronted Mr. Johnson, berating him personally. (*Id.*). Every attempt at polite response was met with heckling and accusations, all while one of them filmed Mr. Johnson. (*Id.*). For his part, Mr. Johnson, realizing the futility of the situation, tried to engage with the teenagers as little as possible. (*Id.*). The young men crowded Mr. Johnson, at one point so close as to make physical contact with him. (*Id.*). One of the two, Jacob Geittmann, shouted homophobic slurs at Mr. Johnson, seeking his "agreement" with these statements, apparently in an effort to make Mr. Johnson appear homophobic and abusive. (*Id.*). In reality, Mr. Johnson, after hearing out the two young men, returned to his table. (*Id.*). The entire encounter lasted only a few minutes. (*Id.*). During the entirety of this exchange, Mr. Johnson never expressed any anger, raised his voice, or threatened the prom group in any way. (*Id.*). As the video shows, Johnson just stands in place with his hands in his pockets, smiling while he hears out the teenagers, slowly making his way back to his table. (*Id.*).

That same evening, Jacob Geittmann, one of the two young men who had confronted Johnson, published a video of the incident to his TikTok account. (*Id.* at Page ID # 13). The published video was deceptively edited in a way to make it appear that it had been Mr. Johnson, and not the teenagers, who had been the aggressor, who had shouted homophobic slurs, and who had behaved uncharitably toward the prom group. (*Id.* at Page ID# 13-15). Shortly after its publication, TikTok removed

the video clip from its service and refused to allow Geittmann to republish it. (*Id.* at Page ID # 13). Nevertheless, by that time, the video had been downloaded and "mirrored" to other devices and social media services, including Twitter, Reddit, and LinkedIn. (*Id.*). Geittmann followed up his TikTok posting with two new postings, both of which contain a long verbal narrative describing Johnson's allegedly aggressive behavior. (*Id.* Page ID# 13-15). Geittmann's narratives included allegations of homophobic insults, slaps, punches, and police intervention. (*Id.*). This account is a complete fabrication in nearly every way, and is deeply misleading. (*Id.*). Despite Geittmann's efforts, the entire matter received little online attention, until the involvement of the Defendant-Appellee, Kathy Griffin ("Griffin").

## B.    Griffin's Involvement

Very late in the night on April 25, or in the early morning hours of April 26, 2021, Griffin republished Geittmann's video on her Twitter account, where she has more than two million followers:

### <u>Griffin's First Tweet</u>

> **If this is Sam Johnson in Nashville, Tennessee, the CEO of @VisuWell, the healthcare-tech-growth strategist, married to Jill Johnson where they may reside in Franklin, Tennessee, it seems like he's dying to be online famous.**

(*Id.* at Page ID# 15-17).  In modern vernacular, this is called "doxing": the public revealing of identifying information, such as names and locations, of people targeted

for public obloquy. The tweet's text was accompanied by a screen image from the video that showed Mr. Johnson. (*Id.* at Page ID# 16). Griffin's tweet also reproduced a "headline" above the image of Mr. Johnson, which read: "Homophobic POS in Tennessee harasses a teenager for wearing a dress to prom."



(*Id.* at Page ID# 16). With Griffin's boost, the Geittmann video went viral, provoking a firestorm of outrage from Griffin's followers. (*Id.* at Page ID# 17).

At least one of her followers was in Tennessee. (*Id.* at Page ID# 16-18). Mr.

Geittmann himself responded directly to Griffin:

> Kathy (emojis omitted) when I posted this I did NOT
> expect it to go viral to this extent but THANK YOU SO
> MUCH.

(*Id.* at Page ID# 17-18). Griffin then replied directly to Mr. Geittmann, who resides

in Tennessee, at the twitter address of "@jacobgeittmann2."[1]

### **Griffin's Second Tweet:**

> **Jacob, I'm so sorry you had to be anywhere near this
> thing. I was very anxious for you while watching, but
> am grateful you took the video (as is your right). I'm
> proud to be an[] ally. Let me know if there's anything
> I can do to help. (emojis omitted)**

(*Id.*). In response to Griffin's first tweet, major customers of VisuWell, including

University Hospitals Health System, Inc., published on its official Twitter account

that it was "shocked and disturbed" by the video and would "evaluat[e] our business

relationship with VisuWell." (*Id.* at Page ID# 18-20). Another major customer, the

University of Arkansa for Medical Sciences, also replied directly to Griffin's First

Tweet, condemning Mr. Johnson's behavior. (*Id.* at Page ID# 19-20).

---

[1]    Geittmann stated in one of his videos that the Harpeth Hotel in Franklin, Tennessee is "close to where we lived." (RE 1, Compl., Page ID# 14). This Court can take judicial notice that Franklin is a southern suburb of Nashville, Tennessee, and that Franklin is approximately fifty nautical miles to Kentucky, the nearest state border. By road, Kentucky is even farther from Franklin. Geittmann undoubtedly resides in Tennessee.

Hours after her First Tweet on April 26, 2021, Griffin published a third tweet. (*Id.* at Page ID# 20-21). This publication included two images of Mr. Johnson's face along with the caption:

### Griffin's Third Tweet:

**Who is? THIS Sam Johnson of Franklin Tennessee?**

(*Id.* at Page ID# 20-21, 59).

VisuWell, Johnson's employer and a Tennessee company, did not comment publicly on the matter until after Griffin's tweets. (*Id.* at Page ID# 21). In its second message responding to Griffin's tweets, VisuWell stated: "[T]he VisuWell BOD has chosen to terminate Mr. Johnson from his position as CEO, effective immediately." (*Id.*). In response, Griffin tweeted directly at @VisuWell and quoted VisuWell's tweet.

### Griffin's Fourth Tweet:

**Has Sam Johnson has been removed from his position on the Board of Directors and, if not, what measures is Visuwell taking in this regard? Leaving Johnson on the Board raises an eyebrow that the company intends to rehire. Know the nation will remain vigilant.**

(*Id.* at Page ID# 22). VisuWell is a Tennessee citizen, having its offices and principal place of business in Tennessee. (*Id.* at Page ID# 4). Minutes after Griffin's tweet, VisuWell replied directly to Griffin at @kathygriffin. It wrote:

"[T]erminated."

8

(*Id.* at Page ID# 22-23). In another instance, VisuWell replied directly to Griffin at @kathygriffin. It wrote:

"[T]erminated. [C]onfirmed."

(*Id.* at Page ID# 23-24). In response to VisuWell's subsequent announcement of Mr. Johnson's termination, one of Griffin's followers tweeted, "@kathygriffin we did it!!!" (*Id.* at Page ID# 24-25).

As alleged in the Complaint, Griffin's targeting of Mr. Johnson caused him to lose his job, suffer embarrassment, psychic injury, pain and suffering, and reputational losses in the Nashville business community. (*Id.* at Page ID# 26-28, 29-30, 32-35). Griffin also targeted and singled out Mr. Johnson's wife, Jill Johnson ("Mrs. Johnson"), whose "doxing" caused her severe emotional distress, reputational injury, and physical sickness. (*Id.*). Mr. and Mrs. Johnson have been subject to threatening communications. (*Id.* at Page ID# 72-86).

## II.    Relevant Procedural History

Samuel and Jill Johnson filed suit against Griffin in the District Court on April 25, 2022. (RE 1). Thereafter, on July 15, 2022, Griffin filed a Motion to Dismiss the Complaint for Lack of Personal Jurisdiction under Fed. R. Civ. P. 12(b)(2) and Failure to State a Claim under Fed. R. Civ. P. 12(b)(6). (RE 18). The Johnsons filed a Response in Opposition to that Motion on August 19, 2022 (RE 29), and Griffin filed a Reply in Support on September 2, 2022. (RE 30).  No evidentiary hearing

occurred. On March 3, 2023, the District Court entered a Memorandum Opinion and Order granting Griffin's Motion to Dismiss for Lack of Personal Jurisdiction and dismissing all claims. (RE 32, 33). The Johnsons timely filed a Notice of Appeal on March 28, 2023. (RE 34).

## III.    Rulings Presented For Review

This appeal seeks review of the District Court's Memorandum Opinion and Order entered on March 3, 2023, which granted Griffin's Motion to Dismiss for Lack of Personal Jurisdiction. (RE 32, 33).

## SUMMARY OF ARGUMENT

Defendant-Appellee Griffin directed her tortious conduct at the State of Tennessee in her aggressive "doxing" and shaming campaign against Mr. and Mrs. Johnson, husband and wife and Plaintiffs in this suit. Griffin "purposely directed" her tweets to several residents of Tennessee, to a business whose principal place of business is in Tennessee, to businesses that do business in Tennessee, and to the plaintiffs, who are residents of Tennessee. She exchanged specific direct tweets with people in Tennessee, inquiring about their conduct in Tennessee, and recommending additional conduct in Tennessee. She also directed her tweets specifically at Tennessee readers and followers. All of this conduct constitutes "suit-related conduct." In short, Griffin has established substantial, suit-related contacts with Tennessee that justify personal jurisdiction and suffice to comport with "traditional

notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's dismissal of a case for lack of personal jurisdiction. *Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 720 (6th Cir. 2006) (citing *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd*, 91 F.3d 790, 793 (6th Cir. 1996)). Because the District Court granted Griffin's motion to dismiss without an evidentiary hearing, this Court "must consider the pleadings and affidavits in a light most favorable to the plaintiff, and the plaintiff need only make a *prima facie* showing of jurisdiction to defeat such a motion." *Id.* (citing *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998)). A court disposing of a 12(b)(2) motion "**does not weigh** the controverting assertions of the party seeking dismissal." *Dean*, 134 F.3d at 1272 (quoting *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)) (emphasis in original).  To survive a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff need only "demonstrate facts which support a finding of jurisdiction." *Welsh v. Gibbs*, 631 F.2d 436, 438-39 (6th Cir. 1980). Under those circumstances, the burden of the plaintiff is "relatively slight." *Welsh*, 631 F.2d at 439.

## ARGUMENT

### I.      The Requirements of Due Process

A federal court's authority to assert personal jurisdiction is limited to a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(K)(1)(A); *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 502 (6th Cir. 2020). Tennessee's long-arm statute "extends its jurisdiction to due process's limits, so due process is all [this Court] must address." *Parker v. Winwood*, 938 F.3d 833, 839 (6th Cir. 2019). "Due process" under the federal constitution requires that an out-of-state defendant have "minimum contacts" with the forum state sufficient to comport with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum state." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Jurisdiction is proper based on "the effects" of the non-forum state defendant's conduct with the forum state. *Calder v. Jones*, 465 U.S. 783, 789 (1984). "The crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to [the forum state], not just to the plaintiff." *Walden*, 571 U.S. at 287.

### II.     The District Court Misapplied the Law

In its Memorandum Opinion, the District Court granted the Defendant's

Motion to Dismiss for lack of personal jurisdiction. The District Court failed to assess properly the Defendant's numerous and targeted contacts with Tennessee.

### A. Defendant "Specifically Directed" Her Tortious Conduct at the State of Tennessee

The District Court held that Griffin's tweets "intentionally targeted and harmed Tennessee residents," but that the defendant's conduct did not connect her "to the forum in a meaningful way," quoting *Walden v. Fiore*, 571 U.S. 277, 289-90 (2014). It is a mistake, reasoned the District Court, to "improperly attribute[] a plaintiff's forum connections to the defendant," *Id.* "[P]ersonal jurisdiction is absent when the communication was not specifically directed at the forum state." *Blessing v. Chandrasekhar*, 988 F.3d 889, 904 (6th Cir. 2021).

In fact, Griffin did "specifically direct" her tweets at the forum state, repeatedly. Griffin's First Tweet references two cities in Tennessee, Nashville and Franklin, and a Tennessee healthcare company. Griffin's First Tweet shows that she had specific knowledge that the Johnsons resided in Tennessee. Griffin's First Tweet also specifically refers to conduct "in Tennessee" in calling Mr. Johnson a "POS." Griffin's Second Tweet involves a direct communication with Geittmann, who is a resident of Tennessee, was physically in Tennessee at the time of the communication, and who is not the victim of Griffin's tortious conduct. Griffin's Third Tweet again references Franklin, Tennessee. Griffin's Fourth Tweet is another direct communication with a Tennessee resident, this time the business entity

VisuWell, issuing a warning to the company should Mr. Johnson be retained on or rehired onto the company's board of directors. Once again, this is a direct communication with a Tennessee entity who is not the victim himself.

### B.    Defendant "Specifically Directed" Her Tortious Conduct at the Johnsons

In all of her online activity, Griffin also "specifically directed" her conduct at Mr. and Mrs. Johnson, both Tennessee residents. The District Court correctly noted that the Supreme Court has stated that "the plaintiff cannot be the *only* link between the defendant and the forum," citing *Walden*, 571 U.S. at 285 (emphasis added). Simply because the plaintiff cannot be the "only" or sole link between the defendant and the forum, however, does not mean that this link does not matter. The plaintiff's status as a resident of and employee in Tennessee counts; it just cannot suffice by itself to satisfy the "minimum contacts" demanded by due process. "Put simply, however significant the plaintiff's contacts with the forum may be, those contacts *cannot be decisive* in determining whether the defendant's due process rights are violated." *Walden*, 571 U.S. at 285-6 (emphasis added). The plaintiff cannot "solely" use the contacts of the plaintiff with the forum to establish personal jurisdiction over the defendant. *Hanson v. Denckla*, 357 U.S. 235, 253-54 (1958); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980) (plaintiff's contacts with the forum cannot be "decisive").

The direct targeting of the plaintiffs cannot alone be decisive, but it does

matter. In this case, Griffin went far out of her way to target Tennessee residents, and did so in part by communicating directly with Mr. Johnson's employer, VisuWell, in an effort to get him fired from his job and his board position. The District Court's conclusion that "*Walden* forecloses Plaintiffs' argument that Griffin is subject to jurisdiction because her allegedly tortious postings on social media intentionally targeted and harmed Tennessee residents" misconstrues the law and merits reversal on its own. The law does not "foreclose" consideration of injury to the victims; it only provides that such consideration does not form the sole or "only" connection with the forum.

The contention that Griffin targeted Tennessee residents, although not alone dispositive, is nonetheless of weight in assessing the "traditional notions of fair play and substantial justice" required for the extension of personal jurisdiction. She clearly and specifically directed her tortious conduct at the Johnsons. All four of her tweets target one or both of the Johnsons by name. Several identify their place of residence and employment. In short, Griffin made it her business to use her powerful social media presence to "dox" the Johnsons by identifying them by name, photograph, and place of residence, to shame Mr. Johnson and call him a "POS," and then to see to it that he was terminated from his employment contract. The fact that her direct victims are residents of Tennessee is of substantial weight in assessing the fairness of personal jurisdiction.

15

The "specifically direct" targeting of the Johnsons is relevant to personal jurisdiction in another sense. This is not the kind of case the Supreme Court was concerned with in *Walden*. It is not a case that the defendant targeted a plaintiff, and that, in turn, the plaintiff happened to be a resident of a particular state. In that situation it could be said that the defendant's sole link with the forum was by virtue of the plaintiff's connections to the forum. That is not the case here. Griffin targeted Johnson specifically in Tennessee, rousing up a Tennessee employer to her cause, communicating with Geittmann, the man orchestrating Johnson's demise, and threatening Johnson's employer should it not participate in her scheme. Griffin's involvement with Tennessee is direct, repeated, and substantial. It is far from a situation where her "only connection with the forum" is through "the plaintiff's forum connections." *Walden*, 571 U.S. at 289. Griffin has real forum connections beyond the mere location of injury. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 289-90.

### C.    Defendant "Specifically Directed" Her Conduct at Tennesseans In Particular

The District Court stated that, "[w]hile Griffin's tweets expressly named Tennessee residents, a Tennessee business, and Tennessee cities, there are no allegations in the complaint that Griffin's tweets were directed at Tennessee readers, as opposed to residents of other states, or that Griffin posted her tweets hoping to

reach Tennessee specifically as opposed to her two million Twitter followers generally." (RE 32, Memorandum Opinion, Page ID# 243-244). The Court added, "[n]or does the complaint allege that Griffin has any Twitter followers in Tennessee or that Tennessee was the focal point of Griffin's tweets." (*Id.* at Page ID# 243).

In fact, the Complaint does so allege; the District Court's conclusion that the Complaint contains "no allegations in the complaint that Griffin's tweets were directed at Tennessee readers, as opposed to residents of other states" is incorrect. In Griffin's First Tweet, Griffin tweeted directly to a Tennessee citizen. (RE 1, Compl., Page ID# 15-16 (¶ 81)). She also linked directly to VisuWell's Twitter account in that original tweet. (*Id.*). The tweet makes plain that Griffin knew she was contacting a Tennessee resident and Tennessee employer about conduct that occurred in Tennessee. The Complaint alleges that VisuWell "has its offices and principal place of business in Tennessee." (*Id.* at Page ID# 4 (¶ 19)). Griffin "published in April 2021 several tweets specifically directed to the State of Tennessee and at least two of Tennessee's citizens." (*Id.* at Page ID# 8 (¶ 38)). In addition, the Complaint alleges that Griffin, on at least two occasions, aimed her tweets directly at two Tennessee citizens, namely Geittmann and VisuWell. (*Id.* at Page ID# 16-18, 20-25). These are "Tennessee readers." The District Court also stated that the Complaint fails to allege that Griffin "posted her tweets hoping to reach Tennessee specifically as opposed to her two million Twitter followers

17

generally." (*Id.* at Page ID# 243-244). Yet her repeated naming of the location of the Johnsons' residence and place of business, and her communications with Geittmann and VisuWell by her public tweets, provide factual support for the allegation that she was "hoping to reach Tennessee specifically."

In ruling on a motion to dismiss, the District Court is required to accept all pleaded facts as true and to construe all doubts in the plaintiff's favor. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). This the District Court did not do. The Complaint alleges, at several junctures, that Griffin specifically targeted Tennessee. The Supreme Court has repeatedly cautioned against pleading standards becoming overly technical. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face"). Fed. R. Civ. P. 8(a)(1) identifies the minimal requirements for a Complaint. A claim for relief "must contain" only "a short and plain statement of the grounds for the court's jurisdiction." The Rule list no special requirements; this Court should not add any to the federal rule.[2]

---

[2]    Kathy Griffin has over two million followers of her Twitter account; it is obvious that each of the fifty states has thousands. Under Federal Rule of Evidence 201(d), a court may take judicial notice at "any stage of the proceeding," including on appeal. *Hotel Employees & Rest. Employees Union, Local 100 of New York, N.Y. & Vicinity, AFL-CIO v. City of New York Dep't of Parks & Recreation*, 311 F.3d

## III.    The District Court Misconstrued or Ignored Relevant Judicial Precedent

The District Court principally relied on two judicial decisions in finding no personal jurisdiction in Tennessee over Kathy Griffin. Neither decision, however, supports the Court's ruling; in fact, they both militate against it. A third decision, indeed a decision of the Supreme Court, was much-discussed in the court filings but not even mentioned in the District Court's opinion. That decision provides the most direct and relevant controlling precedent on the matter before this Court.

### A.    Walden v. Fiore, 571 U.S. 277 (2014)

*Walden v. Fiore* involved a Georgia police officer who conducted a search of the baggage of two passengers, who were traveling by airline connecting through Georgia as they flew from Puerto Rico to their homes in California and Nevada. The defendant seized the passengers' cash of $97,000 on suspicion of involvement with illegal drug transactions. To justify his seizure, the defendant subsequently drafted an affidavit that allegedly provided a false justification. This falsity caused a delay in the eventual return of the money to the passengers, including the plaintiff in

---

534, 540 n.1 (2d Cir. 2002); *In re Indian Palms Assoc. Ltd.*, 61 F.3d 197, 205 (3d Cir. 1995). The Johnsons have repeatedly attempted to determine the number of Griffin's Twitter followers in Tennessee in order to establish the basis for judicial notice. At some point since the start of this litigation, however, Griffin changed the status of her Twitter account from "public" to "protected" status, meaning her tweets are now private and available only to her followers. Because she has blocked access to the account information, this Court is entitled to presume that she has followers in Tennessee.

Nevada. The defendant had no direct connection to Nevada other than the mere fact that the plaintiff passing through Georgia happened to reside there. Referring to *Calder v. Jones*, 465 U.S. 783 (1984), the trial court in *Walden* stated that, "even if petitioner caused harm to respondents in Nevada while knowing that they lived in Nevada, that fact alone did not confer jurisdiction." *Walden*, 571 U.S. at 282. In upholding this decision, the Supreme Court stated that, "[f]or a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum state." *Id.* at 284.

This "substantial connection" must arise, first, "out of contacts that the 'defendant *himself*' creates with the forum state." *Id.* at 284 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). In *Walden*, the defendant did nothing to create a contact with Nevada, apart from allegedly injuring a person in Georgia whom he may have known was a resident of Nevada. As the Court notes, the fact that the plaintiff happens to reside in Nevada does not create minimum contacts. "Our 'minimum contacts' analysis" does not include "the defendant's contacts with persons who reside there." Just because the plaintiff in *Walden* happened to reside in Nevada did not, without anything more, suffice to confer personal jurisdiction. Instead, however, where the defendant has "purposefully 'reached[ed] out beyond' their State and into another," such as "by circulating magazines to 'deliberately exploi[t]' a market in the forum State," *Walden*, 571 U.S. at 285, quoting *Keeton v.*

*Hustler Magazine, Inc.*, 465 U.S. 770, 773-74 (1984), then the defendant is properly subject to jurisdiction. The Court added that "physical entry into the State . . . is certainly relevant contact." *Id.* at 285. In *Walden*, the defendant had not made "physical entry" into Nevada. As the Complaint alleges, at least twice Griffin entered Tennessee to put on live performances. (RE 1, Compl., Page ID# 9 (¶ 43)). Her live performances feature a highly political brand of entertainment that adds to her following and furthers her ability to "dox" and shame people she chooses.

The tortious conduct of Griffin differs in kind from that at issue in *Walden*. She did not merely injure a person who it turns out is a resident of Tennessee. Instead, Griffin reached out to Tennessee, directing her tweets to people and a business in Tennessee. She directly and intentionally caused Mr. Johnson to lose his job in Tennessee. As the Court in *Walden* holds with respect to intentional torts, "[a] forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden*, 571 U.S. at 286.

### B.    Blessing v. Chandreskhar, 988 F.3d 889 (6th Cir. 2021)

This matter involved the tweets of various people, including Griffin, concerning a controversial incident involving high school students from Kentucky at the Lincoln Memorial in Washington, D.C. This Court found that asserting personal jurisdiction over the defendants violated Kentucky's long-arm statute, a

matter not at issue in this case. Although not necessary to its decision, the Court also addressed Griffin's argument that personal jurisdiction over the defendants in Kentucky would be inconsistent with constitutional due process. Griffin argued that she never directed her tweets to anyone in the forum. *Blessing*, 988 F.3d at 904. This Court agreed, finding that personal jurisdiction in that case did not comport with due process. *Id.* at 904-05. Citing to *Walden*, the *Blessing* court reasoned that the defendant "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to" Kentucky. *Id.* at 906.

In this matter, Griffin did "contact [some]one in" Tennessee. As an integral part of her tortious conduct in this matter, Griffin tweeted directly at Mr. Johnson, doxing his name, image, and residence. She tweeted directly at Geittmann, encouraging him and offering her help as he continued in his quest to ruin Mr. Johnson's career and reputation. As an integral part of her tortious conduct in this matter, Griffin contacted VisuWell directly, completing the tort of tortious interference by verifying that the company had terminated Mr. Johnson from all his gainful employments. The *Blessing* court found personal jurisdiction lacking because "Kentucky was not 'the focal point . . . of the story,'" but instead the controversy arose in Washington, D.C. In this matter, the focal point of Griffin's tweets is Tennessee, exclusively. All the relevant conduct occurred in Tennessee. Her tweets mention Tennessee repeatedly.

This Court's decision in *Blessing* is not wrong; its application to this case is wrong. Here, the focal point of Griffin's tweets is on conduct that occurred in Tennessee. She communicated directly with residents of Tennessee. She caused injury the brunt of which occurred in Tennessee. Personal jurisdiction over Griffin in Tennessee does not offend due process.

### C.    Calder v. Jones, 465 U.S. 783 (1984)

This key decision of the U.S. Supreme Court was not even cited by the District Court below. *Calder* was, however, the principal case relied on by the Supreme Court in *Walden*; *Calder* also constitutes the most relevant judicial precedent for the case at bar.[3] As the court stated in *Walden*, it is the *Calder* test that "illustrates the application of these principles." *Calder* involved the assertion of personal jurisdiction in California over a defamatory publication by a newspaper published in Florida. In upholding personal jurisdiction over the Florida defendant in California, the Supreme Court cited to the following facts, all of which created the requisite "minimum contacts" needed to satisfy due process, to wit:

- the Florida defendants' direct communications (in that case, by telephone) with California residents;

- the published story concerned plaintiff's activities in California;

---

[3]    This decision was brought to the District Court's attention and was discussed in the Plaintiff's Memorandum opposing the motion to dismiss. (RE 29, Memorandum, Page ID# 193-198).

- the defendant's publication caused reputational injury in California;

- the "brunt" of the injury was suffered by the plaintiff in California.

"In sum, California [wa]s the focal point both of the story and of the harm suffered." *Calder*, 465 U.S. at 789. Jurisdiction was "therefore proper in California based on the 'effects' of their Florida conduct in California." *Id.* "The crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff." *Walden*, 571 U.S. at 287.

The same analysis applies to Griffin. At least twice, she directly communicated with Tennessee residents; her published tweets concerned Mr. Johnson's activities in Tennessee; her tweets caused reputational and other injuries in Tennessee; and the "brunt" of the Johnsons' injuries were and continue to be suffered in Tennessee. This case is on all fours with the requirements of *Calder*.

## CONCLUSION

Therefore, this Court should reverse the Memorandum Opinion and Order of the United States District Court for the Middle District of Tennessee (RE 32, 33) and remand the case for trial.

24

Respectfully submitted,

*/s/ Todd V. McMurtry*

Todd V. McMurtry, Esq.
J. Will Huber, Esq.
HEMMER DEFRANK WESSELS, PLLC
250 Grandview Drive, Suite 500
Fort Mitchell, Kentucky 41017
Phone: (859) 344-1188
Fax: (859) 578-3869
tmcmurtry@hemmerlaw.com
whuber@hemmerlaw.com

and

Lyndsay C. Smith, Esq.
SMITH, PLC
311 22nd Avenue North
Nashville, Tennessee 37203
Phone: (615) 351-2442
Fax: (615) 866-9863
lsmith@smith-plc.com

*Attorneys for Plaintiffs-Appellants*
*Samuel Johnson and Jill Johnson*

25

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and 6 Cir. R. 32(b) because it contains 5,248 words, including footnotes, as determined by the word-count function of Microsoft Word, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.


Dated:  May 8, 2023                         */s/ Todd V. McMurtry*_____
                                            Todd V. McMurtry

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was electronically filed and served to counsel for Defendants-Appellees by notice through the Court's CM/ECF system this 8th day of May, 2023.

*/s/ Todd V. McMurtry*
Todd V. McMurtry

**ADDENDUM**

**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**

| | *Johnson, et al v. Griffin* | |
|---|---|---|
| | *No. 23-5257, District Court No. 3:22-cv-00295* | |
| **RE** | **Description** | **PageID#** |
| 1 | Complaint with Exhibits | 1-88 |
| 18 | Griffin's Motion to Dismiss For Lack of Personal Jurisdiction and Failure To State a Claim | 138-139 |
| 19 | Griffin's Memorandum in Support of Motion to Dismiss For Lack of Personal Jurisdiction and Failure to State a Claim | 140-165 |
| 29 | Johnsons' Response in Opposition to Griffin's Motion to Dismiss For Lack of Personal Jurisdiction and Failure to State a Claim | 189-214 |
| 30 | Griffin's Reply in Support of Motion to Dismiss For Lack of Personal Jurisdiction and Failure to State a Claim | 215-226 |
| 31 | Griffin's Notice of Filing Supplemental Authority | 227-228 |
| 31-1 | Griffin's Attachment to Notice of Filing Supplemental Authority | 229-237 |
| 32 | Memorandum Opinion | 238-244 |
| 33 | Order | 245 |
| 34 | Notice of Appeal | 246-247 |