No. 23-5257

# In the United States Court of Appeals
## For the Sixth Circuit

SAMUEL JOHNSON, in his individual capacity,
and JILL JOHNSON, in her individual capacity,

Plaintiffs-Appellants,

v.

KATHY GRIFFIN,

Defendant-Appellee.

**Appeal from the United States District Court,**
**Middle District of Tennessee, Nashville Division**
**Case No. 3:22-cv-00295, Hon. William L. Campbell**

## BRIEF OF DEFENDANT-APPELLEE KATHY GRIFFIN

### ORAL ARGUMENT REQUESTED

HOLLAND & KNIGHT, LLP
Robb S. Harvey
511 Union Street, Suite 2700
Nashville, Tennessee 37219
(615) 244-6380
robb.harvey@khlaw.com

GREENBERG TRAURIG, LLP
Michael J. Grygiel
Cynthia E. Neidl
54 State Street, 6th Floor
Albany, New York 12207
(518) 689-1400
grygielm@gtlaw.com;
neidlc@gtlaw.com

Adam Siegler
1840 Century Park East, Suite 1900
Los Angeles, California 90067
(310) 586-7700
Adam.Siegler@gtlaw.com

*Attorneys for Defendant-Appellee Kathy Griffin*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. App. R. 26.1 and 6 Cir. R. 26.1, Defendant-Appellee Kathy Griffin makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  **No**.

2.  Is there a publicly-owned corporation not a party to the appeal that has a financial interest in the outcome of this case?  **No**.

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ........................................ i

TABLE OF CONTENTS.......................................................... ii

TABLE OF AUTHORITIES ................................................... iv

STATEMENT ON ORAL ARGUMENT ..............................................1

STATEMENT OF ISSUES FOR REVIEW ......................................1

STATEMENT OF THE CASE...................................................2

    A. The Complaint's Allegations...........................................2

        1.  The April 24, 2021, Incident at the Harpeth Hotel. ..............................2

        2.  The April 25, 2021, TikTok Posts and VisuWell's Response. .............2

        3.  Ms. Griffin's Tweets on April 26, 2021...................................2

        4.  VisuWell's Termination of Mr. Johnson on April 26, 2021.................3

        5.  Ms. Griffin's Final Tweet on April 26, 2021. .......................4

    B. Relevant Procedural History.........................................4

    C. The Dismissal Order Appealed From.................................6

SUMMARY OF THE ARGUMENT ......................................................7

POINT I THE DISTRICT COURT CORRECTLY HELD THAT
        MS. GRIFFIN IS NOT SUBJECT TO PERSONAL
        JURISDICTION IN TENNESSEE ....................................11

    A. Plaintiffs Did Not and Cannot Establish That Ms. Griffin
       Purposefully Availed Herself of the Privilege of Acting
       in Tennessee. .....................................................13

    B. Plaintiffs Failed to Establish That Ms. Griffin Specifically
       Targeted the State of Tennessee With Her Tweets. .................17

    C. The District Court Properly Applied Relevant Authority. ......................22

POINT II  ALTERNATIVELY, THE COMPLAINT IS SUBJECT
        TO DISMISSAL UNDER RULE 12(b)(6) FOR FAILURE
        TO STATE A CLAIM ........................................................28

    A. The Complaint Fails to Satisfy Rule 8's Pleading Requirements...........28

B. Ms. Griffin's Speech in the "Modern Public Square" Did Not "Dox" Plaintiffs and Cannot Be Punished as a Criminal Violation.........30

C. The First Amendment Precludes Civil Liability Based on Ms. Griffin's Tweets. ..................................................................32

   1. Ms. Griffin's Tweets Merit "Special Protection." ...........................33

D. The Complaint's Tortious Interference Claims Are Not Invisible to the First Amendment and Cannot, as a Matter of Law, Be an Actionable "Wrong." ..................................................................35

E. The Complaint's IIED Claim Is Prohibited by the First Amendment. ....39

F. The Complaint's Intrusion Upon Seclusion Claim Is a Non-Starter. ......41

G. Plaintiffs' Claims Requiring a "Duty" Should Be Dismissed as a Matter of Law. ..................................................................45

POINT III  THIS ACTION SHOULD BE DISMISSED, AND MS. GRIFFIN IS ENTITLED TO AN AWARD OF ATTORNEY'S FEES, UNDER THE TPPA ......................................46

CONCLUSION ..................................................................................47

CERTIFICATE OF COMPLIANCE................................................................49

CERTIFICATE OF SERVICE .....................................................................50

ADDENDUM ..................................................................................51

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Air Products and Controls, Inc. v. Safetech International, Inc.*,
  503 F.3d 544 (6th Cir. 2007) ..............................................................................27

*Alexander v. Diet Madison Avenue*,
  473 F. Supp. 3d 551 (E.D. Va. 2020) ................................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................21, 29, 41

*Board of Forensic Document Examiners, Inc. v. American Bar
  Association*,
  No. 16-cv-2641, 2017 WL 549031 (W.D. Tenn. Feb. 9, 2017) ........................27

*Bell Atlantic Corporation v. Twombly*,
  550 U.S. 544 (2007)...............................................................................21, 29, 41

*Beverly Hills Foodland, Inc. v. United Food & Commercial Workers
  Union, Local 655*,
  39 F.3d 191 (8th Cir. 1994) ...............................................................................37

*Binion v. O'Neal*,
  95 F. Supp. 3d 1055 (E.D. Mich. 2015) ......................................................14, 23

*Blessing v. Chandrasekhar*,
  988 F.3d 889 (6th Cir. 2021) .......................................................................*passim*

*Bridgeport Music, Inc. v. Still N The Water Publishing*,
  327 F.3d 472 (6th Cir. 2003) .............................................................................12

*Bristol-Myers Squibb Company v. Superior Court of California*,
  582 U.S. 255 (2017)............................................................................................22

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)...............................................................................11, 12, 17

*Calder v. Jones*,
  465 U.S. 783 (1984).........................................................................20, 25, 26, 27

iv

*Calipari v. Powertel, Inc.*,
   231 F. Supp. 2d 734 (W.D. Tenn. 2002) ............................................................45

*Church of the American Knights of the Ku Klux Klan v. City of Erie*,
   99 F. Supp. 2d 583 (W.D. Pa. 2000)................................................................30

*Connick v. Myers*,
   461 U.S. 138 (1983)......................................................................................10

*Continental Casualty Company v. Tyson Foods, Inc.*,
   No. 1:15-cv-20, 2017 WL 11180252 (E.D. Tenn. Nov. 13, 2017) ...................45

*Coplin v. Fairfield Public Access Television Committee*,
   111 F.3d 1395 (8th Cir. 1997) .........................................................................32

*Desoto v. Board of Parks and Recreation*,
   64 F. Supp. 3d 1070 (M.D. Tenn. 2014) .........................................................39

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
   472 U.S. 749 (1985)......................................................................................32

*Four Navy Seals v. Associated Press*,
   413 F. Supp. 2d 1136 (S.D. Cal. 2005) ...........................................................43

*Gorman v. Jacobs*,
   597 F. Supp. 2d 541 (E.D. Pa. 2009).................................................18, 19, 26

*Granader v. Public Bank*,
   417 F.2d 75 (6th Cir. 1969), *cert denied*, 397 U.S. 1065 (1970) ......................38

*Hensley Manufacturing, Inc. v. Propride, Inc.*,
   579 F.3d 603 (6th Cir. 2009) ..........................................................................29

*Higgins v. Kentucky Sports Radio, LLC*,
   No. 5:18-cv-043, 2019 U.S. Dist. LEXIS 45535 (E.D. Ky. Mar. 20,
   2019), *aff'd*, 951 F.3d 728 (6th Cir. 2020) ...................................................*passim*

*Higgins v. Kentucky Sports Radio, LLC*,
   No. 8:17-cv-367, 2018 U.S. Dist. LEXIS 1959 (D. Neb. Jan. 5, 2018).............34

*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*,
   515 U.S. 557 (1995)......................................................................................32

*Hustler Magazine, Inc. v. Falwell*,
    485 U.S. 46 (1988)................................................................32, 39, 40

*International Shoe Co. v. State of Washington*,
    326 U.S. 310 (1945)....................................................................11, 22

*J. E. Riley Investment Co. v. Commissioner of Internal Revenue*,
    311 U.S. 55 (1940)............................................................................29

*Jefferson County School District No. R-1 v. Moody's Investor's
    Services, Inc.*,
    175 F.3d 848 (10th Cir. 1999) ...................................................37, 39

*Johnson v. Arden*,
    614 F.3d 785 (8th Cir. 2010) ....................................................18, 25

*Johnson v. University Hospital Health System, Inc.*,
    No. 3:21-cv-00656 (M.D. Tenn. Aug. 24, 2021)...............................38

*Lampo Group, LLC v. Paffrath*,
    No. 3:18-cv-01402, 2019 WL 3305143 (M.D. Tenn. July 23, 2019) ...............47

*Medical Laboratory Management Consultants v. American
    Broadcasting Companies, Inc.*,
    30 F. Supp. 2d 1182 (D. Ariz. 1988), *aff'd*, 306 F.3d 806 (9th Cir. 2002) ........43

*Miller v. Gizmodo Media Group, LLC*,
    383 F. Supp. 3d 1365 (S.D. Fla. 2019) ............................................14

*Molthan v. Vanderbilt University*,
    No. 3:17-cv-00706, 2017 WL 1489099 (M.D. Tenn. Apr. 26,
    2017) ................................................................................................46

*Mucerino v. Martin*,
    No. 3:21-cv-00284, 2021 WL 5585637 (M.D. Tenn. Nov. 30, 2021) ..............47

*Murphy v. National City Bank*,
    560 F.3d 530 (6th Cir. 2009) ...........................................................28

*NAACP v. Claiborne Hardware Co.*,
    458 U.S. 886 (1982).........................................................................32

*Neogen Corp. v. Vicam*,
  No. 5:96-cv-138, 1997 WL 481021 (W.D. Mich. Feb. 20, 1997)......................19

*New York Times Company v. Sullivan*,
  376 U.S. 254 (1964)...............................................................29, 32, 38

*Newcombe v. Adolf Coors Company*,
  157 F.3d 686 (9th Cir. 1998) ...............................................................45

*Packingham v. North Carolina*,
  582 U.S. 98 (2017)...............................................................31

*Parker v. Winwood*,
  938 F.3d 833 (6th Cir. 2019) ...............................................................11

*Pierson v. News Group Publications, Inc.*,
  549 F. Supp. 635 (S.D. Ga. 1982) .......................................................44

*Ragland v. F & M Koz, Inc.*,
  No. 221-cv-02530, 2022 WL 945317 (W.D. Tenn. Mar. 29, 2022) .................46

*Redco Corporation v. CBS, Inc.*,
  758 F.2d 970 (3d Cir. 1985) ...............................................................37

*Renasant Bank v. Ericson*,
  801 F. Supp. 2d 690 (M.D. Tenn. 2011) ...........................................35

*Republic Bank & Trust Company v. Bear Stearns & Co.*,
  683 F.3d 239 (6th Cir. 2012) ...............................................................41

*Reynolds v. International Amateur Athletic Federation*,
  23 F.3d 1110 (6th Cir. 1994) ...............................................................19

*Rodic v. Thistledown Racing Club, Inc.*,
  615 F.2d 736 (6th Cir. 1980) ...............................................................38

*Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*,
  772 F.2d 214 (6th Cir. 1985) ...............................................................28

*Shrader v. Biddinger*,
  633 F.3d 1235 (10th Cir. 2011) .......................................................13

*Southern Machine Co. v. Mohasco Industries, Inc.*,
    401 F.2d 374 (6th Cir. 1968) ................................................................12

*Saxe v. State College Area School District*,
    240 F.3d 200 (3d Cir. 2001) ................................................................30

*Snyder v. Phelps*,
    562 U.S. 443 (2011).................................................................10, 33

*Sypniewski v. Warren Hills Regional Board of Education*,
    307 F.3d 243 (3d Cir. 2002) ................................................................30

*Texas v. Johnson*,
    491 U.S. 397 (1989).................................................................31

*Unelko Corp. v. Rooney*,
    912 F.2d 1049 (9th Cir. 1990) ................................................................37

*United States v. Ferguson*,
    681 F.3d 826 (6th Cir. 2012) ................................................................39

*United States v. Yung*,
    37 F.4th 70 (3d Cir. 2022) ................................................................30

*Wagda v. Town of Danville*,
    No. 16-cv-488, 2016 WL 6160160 (N.D. Cal. Oct. 24, 2016)...........................38

*Walden v. Fiore*,
    571 U.S. 277 (2014).................................................................*passim*

*Young v. New Haven Advocate*,
    315 F.3d 256 (4th Cir. 2002) .........................................13, 20, 25, 26

*Yuhasz v. Brush Wellman, Inc.*,
    341 F.3d 559 (6th Cir. 2003) ................................................................28

**State Cases**

*Bain v. Wells*,
    936 S.W.2d 618 (Tenn. 1997) ................................................................40

*Givens v. Mullikin*,
  75 S.W.3d 383 (Tenn. 2002), *superceded on other grounds by statute,* Tenn. Code Ann. § 29-26-121(f) ....................................................41, 42

*Gleason v. Smolinski*,
  2009 WL 2506607 (Conn. Super. Ct. July 20, 2009)........................................44

*Owens v. Lead Stories, LLC*,
  2021 WL 3076686 (Del. Super. Ct. July 20, 2021), *aff'd*, 273 A.3d 275 (Del. 2022) ........................................................................................36, 37

*Roberts v. Essex Microtel Associates*,
  46 S.W.3d 205 (Tenn. Ct. App. 2000)...............................................................42

*Rogers v. Louisville Land Co.*,
  367 S.W.3d 196 (Tenn. 2012) ...........................................................................40

*Swallows v. Western Electric Co.*,
  543 S.W.2d 581 (Tenn. 1976) ...........................................................................40

*Tagouma v. Investigative Consultant Services., Inc.*,
  4 A.3d 170 (Pa. Super. Ct. 2010).......................................................................44

**Federal Constitution, Statutes and Rules**

United States Constitution, First Amendment .................................................*passim*

Federal Rule of Evidence 201(f)................................................................................39

Federal Rule of Civil Procedure 8 ............................................................................28

Federal Rule of Civil Procedure 12 ..........................................................................33

Federal Rule of Civil Procedure 12(b).......................................................................5

Federal Rule of Civil Procedure 12(b)(2) .................................................................5

Federal Rule of Civil Procedure 12(b)(6) .............................................5, 28, 46, 47

**State Constitution and Statutes**

Tennessee Constitution of 1796...............................................................................33

Tennessee Code Annotated § 29-26-121(f)...............................................................42

Tennessee Code Annotated § 39-17-315 ..........................................................*passim*

Tennessee Code Annotated § 39-17-315(a)(1) ....................................................30

Tennessee Code Annotated § 39-17-315(a)(3) ....................................................37

Tennessee Code Annotated § 39-17-315(a)(4) ....................................................30

Tennessee Code Annotated § 39-17-308 ...................................................4, 30, 46

Tennessee Public Participation Act, Tennessee Code Annotated
    §§ 20-17-101 *et seq.*..............................................................................5, 11, 46

**Other Authorities**

*Restatement (Second) of Torts* § 652B ...................................................................41

## STATEMENT ON ORAL ARGUMENT

Ms. Griffin disagrees with Plaintiffs-Appellants' statement that this case involves important personal jurisdiction issues arising from the exercise of First Amendment rights on the internet, but agrees that it does involve substantial constitutional free speech questions on the merits that are of wide public interest. Ms. Griffin therefore respectfully requests oral argument.

## STATEMENT OF ISSUES FOR REVIEW

I.      Whether the District Court correctly concluded that Ms. Griffin's publication while in California of three topical social media posts addressed to a national audience concerning Plaintiff-Appellant Samuel Johnson's involvement in a controversial and highly publicized event occurring at the Harpeth Hotel in Franklin, Tennessee, is an insufficient basis to establish personal jurisdiction over Ms. Griffin under Tennessee's long-arm statute and the Due Process Clause.

II.      Alternatively, whether the Complaint fails to state a viable claim for relief under state tort law arising from the purported violation of criminal harassment and stalking statutes which do not authorize a private cause of action and where such claims are based on Ms. Griffin's publication of three comments on Twitter addressed to a national audience concerning a matter of legitimate public interest.

III.      Whether, as applied to Ms. Griffin's tweets, the state tort law claims asserted in the Complaint violate the First Amendment.

## STATEMENT OF THE CASE

### A. <u>The Complaint's Allegations</u>.

#### 1.  The April 24, 2021, Incident at the Harpeth Hotel.

On April 24, 2021, at the Harpeth Hotel in Franklin, Tennessee, Plaintiff-Appellant Samuel Johnson had a confrontation with Dalton Stevens, a male student wearing a red prom dress.  (Complaint ("Compl."), R. 1, Page ID #12-13 ¶¶ 64-70, 78)  On that date, Stevens' boyfriend, Jacob Geittmann, posted a Video Clip of that event on TikTok.  (*Id*. ¶¶ 71, 76)  TikTok removed it, but it had spread to other social media services, including Twitter, Reddit, and LinkedIn.  (*Id*. ¶ 77)

#### 2.  The April 25, 2021, TikTok Posts and VisuWell's Response.

On April 25, 2021, Geittmann posted two additional TikTok videos about the incident.  (*Id*. ¶ 78)  In response thereto and on that same date, a user named "Fifty Shades of Whey" (residence not specified) posted the Video Clip stating "Homophobic POS in Tennessee harasses a teenager for wearing a dress to prom." (Compl. Ex. B, R. 1-2, Page ID #110-11)  Also on April 25, 2021, the Chairman of the Board of VisuWell, Mr. Johnson's employer, called Mr. Johnson about the Video Clip.  (Compl., R. 1, Page ID #25 ¶ 96)

#### 3.  Ms. Griffin's Tweets on April 26, 2021.

On April 26, 2021, at 1:45 AM, Defendant-Appellee Kathy Griffin posted her <u>first</u> <u>tweet</u>, which re-posted the Fifty Shades of Whey tweet, and commented "If this is Sam Johnson in Nashville, Tennessee, the CEO of @VisuWell, healthcare-tech-

growth strategist, married to Jill Johnson where they may reside in Franklin, Tennessee, it seems like he's dying to be online famous." (*Id.*, R. 1, Page ID #15 ¶ 81; Compl. Ex. B, R. 1-2, Page ID #110-111)

Ms. Griffin posted a <u>second</u> <u>tweet</u> at 11:15 AM on April 26,[1] asking "Who is? THIS (sic) Sam Johnson of Franklin Tennessee?" (*Id.*, R. 1, Page ID #20 ¶ 86; Compl. Ex. E, R. 1-5, Page ID #58-59)

### 4. VisuWell's Termination of Mr. Johnson on April 26, 2021.

On April 26, 2021, "some of Visuwell's customers, including [UH Cleveland] took notice of the Video Clip and the April 24 Incident." (Compl., R. 1, Page ID #18-19 ¶ 84) UH Cleveland posted that it was "shocked and disturbed" by the Video Clip, and was "evaluating our business relationship with VisuWell[.]" (*Id.*) Also on April 26, 2021, at 5:08 PM, University of Arkansas for Medical Sciences (UAMS), another VisuWell customer, tweeted that it did not condone Mr. Johnson's behavior and that its "decision on whether or not we will continue our business arrangement with VisuWell depends on the company's reaction to the situation." (*Id.*, R. 1, Page ID #19-20 ¶ 85; Compl. Ex. D, R. 1-4, Page ID #56-57)

---

[1]    In the interim between Ms. Griffin's first and second tweets as denominated herein, Ms. Griffin sent another tweet to Jacob Geittmann at 2:15 AM on April 26, 2021, expressing both solidarity and concern for his personal welfare. (Compl., R. 1, Page ID #18-19 ¶ 83; Compl. Ex. C, R. 1-3, Page ID #54-55) This tweet does not mention and says nothing about either Mr. or Mrs. Johnson. It is not alleged to be actionable in the Complaint and, as elaborated below, is therefore not relevant to Plaintiffs' personal jurisdiction argument. *See* POINT 1B., *infra.*

3

On April 26, 2021, VisuWell terminated Mr. Johnson "[a]fter investigating the matter and speaking to individuals involved."  (Compl., R. 1, Page ID #21 ¶ 88)  VisuWell announced its termination decision by tweet on that date at 6:07 PM.  (*Id.*; Compl. Ex. F, R. 1-6, Page ID #60-62)

### 5.  Ms. Griffin's Final Tweet on April 26, 2021.

After VisuWell had announced its termination of Mr. Johnson, Ms. Griffin posted a <u>third</u> <u>tweet</u> on April 26, 2021, at 8:51 PM, asking if Mr. Johnson had been removed from the company's Board.  (Compl., R. 1, Page ID #22 ¶ 89)  VisuWell promptly responded, confirming that Mr. Johnson had been "terminated."  (*Id.*, R. 1, Page ID #22-23 ¶ 90; Compl. Ex. G, R. 1-7, Page ID #63-64)

### B. <u>Relevant Procedural History.</u>

On April 25, 2022, Plaintiffs-Appellants Samuel Johnson and Jill Johnson ("Plaintiffs") filed a Complaint in the United States District Court for the Middle District of Tennessee (Nashville Division) asserting seven causes of action against Ms. Griffin based on her three tweets.  (Compl., R. 1, Page ID #1-36)  The Complaint is premised on Tenn. Code Ann. § 39-17-308, a criminal harassment statute, and Tenn. Code Ann. § 39-17-315, a criminal stalking statute, which Plaintiffs claim imposed a duty of care on Ms. Griffin (Count 7-Negligence *Per Se*), although neither law creates a private right of action.  (*Id.*, R. 1, Page ID #29 ¶ 114)  The Complaint further alleges that by publishing her tweets, Ms. Griffin tortiously interfered with

Mr. Johnson's employment and/or contractual relations (Counts 1, 2, and 3), and intentionally caused Plaintiffs emotional distress (Count 4). The Complaint's next claim for invasion of privacy on behalf of Mrs. Johnson (Count 5) is based on the allegation that, by speaking out on a public event, Ms. Griffin "intruded upon the seclusion of Mrs. Johnson in her private marriage and affairs with Mr. Johnson." (*Id.*, R. 1, Page ID #32-33 ¶ 144) In addition, the Complaint alleges that Ms. Griffin's tweets amount to a *prima facie* tort (Count 6) because they purportedly caused Plaintiffs "reputational injury." (*Id.*, R. 1, Page ID # 34 ¶¶ 156, 158)

On July 15, 2022, Ms. Griffin filed her Rule 12(b) motion to dismiss for lack of personal jurisdiction and failure to state a claim. (Motion, R. 18, Page ID #138) In seeking dismissal pursuant to Rule 12(b)(2), Ms. Griffin argued that the exercise of jurisdiction over her in Tennessee would offend Tennessee's long-arm statute as well as constitutional due process requirements, which are coterminous. (Memorandum, R. 19, Page ID # 146) Ms. Griffin further argued that the Complaint was subject to dismissal pursuant to Rule 12(b)(6) on the grounds Plaintiffs failed to state viable claims against her because the Complaint's causes of action were barred by the First Amendment.[2] (*Id.* Page ID #153-156)

---

[2]   In her Rule 12(b)(6) motion, Ms. Griffin also reserved all rights under the Tennessee Public Participation Act, Tenn. Code Ann. §§ 20-17-101 *et seq*.

Plaintiffs filed their opposition to Ms. Griffin's motion on August 19, 2022. (R. 29, Page ID #189-214)  Among other things, Plaintiffs argued that Ms. Griffin is subject to personal jurisdiction in Tennessee because her tweets "intentionally targeted Tennessee citizens, injuring their reputations and emotional well-being directly and inflaming her Tennessee readers to harass and inflict further injury on the Plaintiffs." (*Id.*, R. 29, Page ID # 192)  Ms. Griffin filed her reply brief on September 2, 2022.  (R. 30, Page ID # 215-226)

## C. <u>The Dismissal Order Appealed From.</u>

On March 3, 2023, the District Court (Hon. William L. Campbell, Jr.) issued a Memorandum (R. 32, Page ID #238-244) and accompanying Order (R. 33, Page ID # 245) (collectively, "Dismissal Order") granting Ms. Griffin's motion to dismiss for lack of personal jurisdiction and directing the Clerk of the Court to close the case. In ruling that the Complaint's allegations failed to demonstrate sufficient minimum contacts on the part of Ms. Griffin with Tennessee as constitutionally required for the maintenance of jurisdiction over her, the District Court reasoned:

> While Griffin's tweets expressly named Tennessee residents, a Tennessee business, and Tennessee cities, there are no allegations in the complaint that Griffin's tweets were directed at Tennessee readers, as opposed to the residents of other states, or that Griffin posted her tweets hoping to reach Tennessee specifically as opposed to her two million Twitter followers generally. *See Blessing*, 988 F.3d at 906.  Nor does the complaint allege that Griffin has any Twitter followers in Tennessee or that Tennessee was the focal point of Griffin's tweets.

(Dismissal Order, R. 32, Page ID # 243-244)  The District Court did not reach the merits of Ms. Griffin's First Amendment defenses to the Complaint.

Plaintiffs timely filed a notice of appeal from the Dismissal Order.  (Notice of Appeal, R. 34, Page ID # 246)

## SUMMARY OF THE ARGUMENT

This appeal tests a core feature of our democracy: the ability to participate in public debate on a public issue without fear of punishment under state tort law.  It arises out of a controversial and widely publicized incident in which Plaintiff Samuel Johnson, a health care company executive, berated a gay high school student who was taking prom pictures at the Harpeth Hotel in Franklin, Tennessee, early on a Saturday evening.  In an attempt to silence protected speech on a matter of legitimate public interest, Plaintiffs seek to impose tort liability on comedian Kathy Griffin for statements she made on Twitter calling out Mr. Johnson's conduct.  The First Amendment prohibits them from doing so.  Thus, whatever tort theory Plaintiffs bounce to, the Complaint fails to state a viable claim.

Without reaching the constitutional merits of Plaintiffs' claims, the District Court correctly dismissed their Complaint for lack of personal jurisdiction over Ms. Griffin.  That Ms. Griffin, a California resident, published comments accessible to anyone who uses Twitter does not give Plaintiffs jurisdictional recourse in a Tennessee court to complain about her statements.  The Constitution's Due Process

clause did not permit the District Court to exercise personal jurisdiction based upon Ms. Griffin's out-of-state expressive activity.  As Judge Campbell held in following established precedent — including this Court's decision in *Blessing v. Chandrasekhar*, 988 F.3d 889 (6th Cir. 2021) — the use of a social media platform to communicate information, absent more, is insufficient to establish personal jurisdiction in any forum where an online statement allegedly injures someone. Plaintiffs' arguments attempting to overcome this barrier would throw the courthouse doors open for social media commentators to face suit in any and all jurisdictions, thereby demolishing traditional due process limitations on a forum's adjudicative authority over a nonresident defendant.

Although the District Court correctly dismissed this case because it lacked jurisdiction over Ms. Griffin, Plaintiffs have also failed to state a claim upon which relief may be granted.  Ms. Griffin moved for dismissal on that basis in addition to the jurisdictional ground, but the District Court opted not to rule on that issue in light of its decision finding an absence of personal jurisdiction.  But this Court may affirm the dismissal for reasons presented to, but not considered by, the District Court. Given that the Complaint's speech-based tort claims are so obviously lacking in merit, it would be appropriate for this Court to dismiss on that basis and definitively end this litigation, once and for all.

Plaintiffs' claims fail as a matter of law because they challenge constitutionally protected speech.  The Complaint therefore attempts to plead around the First Amendment by asserting a grab-bag of tort claims centered on their allegation that Ms. Griffin violated Tennessee criminal statutes for harassment and stalking.  (Compl., R. 1, Page ID # 28-29 ¶¶ 105, 114)  But these laws cannot be conscripted to penalize Ms. Griffin's speech.  Plaintiffs conveniently overlook the fact that the plain language of these statutes demonstrates that they are inapplicable to Ms. Griffin's Twitter posts — *i.e.*, *speech to the public*.  These laws only apply to narrowly defined, egregious conduct *personally directed to the complainant*.  The Complaint itself makes clear that Ms. Griffin never spoke to, addressed, contacted, or communicated with Plaintiffs in any way.  Rather, she simply stated her personal views on a matter of public concern in a public forum.  The fact that Ms. Griffin added her voice to public discourse on social media — Mr. Johnson's behavior as captured on a Video Clip (*id*., R. 1, Page ID #2 ¶ 3) of the incident being the subject of intensive news coverage — cannot be labeled as "dox[ing]," "harassment," or "stalking."  (*Id*., R. 1, Page ID # 2 ¶ 5)

Should this Court elect to reach the First Amendment issues at the heart of the Complaint, it should reject Plaintiffs' improper reliance on accusations of criminal conduct based on the *content* of Ms. Griffin's speech.  The only "crime" that Ms. Griffin is alleged to have committed here is using Twitter to communicate her

opinions to a public audience.  If that is considered sufficient to transmogrify her commentary into a violation of Tennessee criminal law, it would essentially turn every social media user in the country into a potential criminal in Tennessee.  While some might disagree with Ms. Griffin's commentary, the various torts alleged in the Complaint collide with the established principle that "speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (*quoting Connick v. Myers*, 461 U.S. 138, 145 (1983)).  The tweets challenged by Plaintiffs are constitutionally protected forms of expression and cannot be punished under the guise of alleged criminal law violations masquerading as intentional torts or negligence.

Tellingly, Plaintiffs repeatedly complain about the alleged reputational harm they attribute to Ms. Griffin's tweets. (*See* Compl., R. 1, Page ID # 4, 26-27, 29- 30, 33-35 ¶¶ 17, 22, 99-100, 113, 126, 149, 156, 158, 165).  Those assertions, which are the gravamen of the Complaint, expose this lawsuit as a transparent (some might say cynical) attempt to evade the First Amendment defenses and limitations that govern a defamation claim by the simple expedient of asserting alternative tort theories of recovery.  However, Ms. Griffin's opinions are constitutionally protected.  And "motives," whether perceived or real, do not amount to torts.  The First

Amendment's protection for public affairs commentary is neither as casual, marginal, or dispensable as Plaintiffs would have it.

Thus, the District Court's Dismissal Order should be affirmed, either because personal jurisdiction cannot be maintained over Ms. Griffin in Tennessee, and/or because the Complaint's causes of action are defectively pleaded and barred by the First Amendment.  Finally, the Court should dismiss the case under the Tennessee Public Participation Act, Tenn. Code Ann. §§ 20-17-101 *et seq*.

**POINT I**

**THE DISTRICT COURT CORRECTLY HELD
THAT MS. GRIFFIN IS NOT SUBJECT TO
PERSONAL JURISDICTION IN TENNESSEE**

Due process requires that, in order for a federal court to exert power over an out-of-state defendant, the defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted); *accord Parker v. Winwood*, 938 F.3d 833, 839 (6th Cir. 2019).  Minimum contacts typically exist where "the defendant deliberately has engaged in significant activities within a State," and thus purposefully avails herself of the "privilege of conducting activities within the forum state" and is "shielded by the benefits and protections of the forum's laws[.]"  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)

(internal quotation marks omitted); *see also S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968) (holding specific jurisdiction requires that the defendant "purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state"). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous or attenuated contacts or of the unilateral activity of another party or third person." *Burger King Corp.*, 471 U.S. at 475 (internal quotation marks and citation omitted).

"The 'minimum contacts' analysis depends on the defendant's contact with the forum, 'not the defendant's contacts with persons who reside there.'" *Blessing v. Chandrasekhar*, 988 F.3d at 904 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)); *see also Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 478 (6th Cir. 2003) (purposeful availment "is satisfied when the defendant's contacts with the forum state proximately result from actions by the defendant *himself* that create a substantial connection with the forum State") (internal quotation marks and citations omitted, emphasis in original). "[T]he plaintiff cannot be the only link between the defendant and the forum," *Walden*, 571 U.S. at 285, and "the proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290.

A. **Plaintiffs Did Not and Cannot Establish That Ms. Griffin Purposefully Availed Herself of the Privilege of Acting in Tennessee.**

The District Court properly concluded that Ms. Griffin's public commentary on Twitter concerning a public incident of national interest did not establish "sufficient minimum contacts with Tennessee such that jurisdiction over her would be reasonable." (Dismissal Order, R. 32, Page ID # 243)  The District Court faithfully applied relevant Supreme Court and Sixth Circuit personal jurisdiction jurisprudence in rejecting Plaintiffs' arguments that Ms. Griffin was subject to jurisdiction in Tennessee merely because she allegedly intentionally targeted and harmed Tennessee residents.

Courts in the Sixth Circuit and throughout the country have held that social media posts meant for a national or even international audience that concern and allegedly cause harm to the plaintiff "do[] not, without more, subject the poster to personal jurisdiction wherever the posting could be read (and the subject of the posting may reside)." *Blessing*, 988 F.3d at 905 n.15 (internal quotation marks omitted, citing *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011). *See, e.g., Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir. 2002) (holding a plaintiff must show "[s]omething more than posting and accessibility" of online material concerning the plaintiff to establish jurisdiction over an out-of-state defendant); *Alexander v. Diet Madison Ave.*, 473 F.Supp.3d 551, 557 (E.D. Va. 2020) (having "little difficulty concluding" that jurisdiction was lacking over out-

of-state defendants who published online articles and tweets about Virginia resident accessible to a national audience); *Binion v. O'Neal*, 95 F.Supp.3d 1055, 1061 (E.D. Mich. 2015) (holding out-of-state defendant's social media posts mocking and ridiculing photographs of plaintiff were insufficient to establish personal jurisdiction); *Miller v. Gizmodo Media Grp., LLC*, 383 F.Supp.3d 1365, 1375 (S.D. Fla. 2019) (noting "courts have uniformly rejected the argument that a tweet, not specifically directed to a forum state, is a sufficient minimum contact to confer personal jurisdiction under the Due Process Clause").

This Court recently had before it a case remarkably similar to this one, also involving Ms. Griffin.  In *Blessing v. Chandrasekhar*, a group of high school students from Covington, Kentucky "received widespread attention for their conduct at the Lincoln Memorial during the 2019 March for Life Rally."  988 F.3d at 892. The Covington students asserted claims for civil harassment, harassing communications, menacing, and terroristic threatening against Twitter users Sujana Chandrasekhar and Ms. Griffin based on their online commentary concerning the plaintiffs.  *Id.* at 892-93.  Chandrasekhar posted pictures of the students and commentary that "[t]hese are scary faces, indeed. #CovingtonShame . . . Massive re-education is needed, for these children, their families and their communities." *Id*. at 892.  In a series of four tweets, Ms. Griffin provided a link to a video of the students, requested that the students be named and shamed, criticized the students' high school

14

for its response to the situation, and suggested that followers contact the high school. *Id*. at 893.

The *Blessing* Court easily dispensed with the plaintiffs' argument that defendants' tweets subjected them to personal jurisdiction in Kentucky. *Id*. at 904-07. The Court first observed that, where a plaintiff's claims are predicated on "allegedly tortious postings on social media," the Sixth Circuit has held that "personal jurisdiction is absent when the communication was not specifically directed at the forum state." *Id.* at 905. The Court noted that neither of the defendants "had any preexisting relationship with the plaintiffs," they "took no affirmative steps to direct any communications to the plaintiffs or to anyone else in Kentucky, and . . . did not otherwise avail themselves of the benefits and protections of Kentucky's laws." *Id*. at 906. Even though the defendants urged others to identify and shame the plaintiffs and contact their high school, the *Blessing* Court concluded that defendants' messages were not "specifically targeted or even directed at Kentucky readers, as opposed to the residents of other states." *Id*. (internal quotation marks, alternation, and citation omitted).

As the District Court found, *Blessing* is dispositive here. Plaintiffs' claims against Ms. Griffin are predicated on three isolated tweets regarding a matter of general public concern that formed no jurisdictionally relevant contacts with the State of Tennessee. Ms. Griffin had no "preexisting relationship with the plaintiffs,

business or otherwise." *Blessing*, 988 F.3d at 906. Ms. Griffin did not "direct any communications to the plaintiffs" and "did not otherwise avail [herself] of the benefits and protections of [Tennessee's] laws." *Id.* While Ms. Griffin responded to tweets from Tennessee residents Mr. Geittmann and VisuWell, "[t]he 'minimum contacts' analysis depends on the defendant's contact with the forum, 'not the defendant's contacts with persons who reside there.'" *Blessing*, 988 F.3d at 904 (quoting *Walden*, 571 U.S. at 285). And while Ms. Griffin referenced the State of Tennessee and certain Tennessee residents in her tweets, the tweets were unquestionably directed to a nationwide audience, for example suggesting that Mr. Johnson was "dying to be online famous" and warning that "the nation will remain vigilant." (Compl., R. 1, Page ID #15, 22 ¶¶ 81, 89) Indeed, the gist of Plaintiffs' claims is that Ms. Griffin directed her tweets to "her followers and the public" (*Id.*, Page ID # 2 ¶ 6; *see also id.* Page ID # 26 ¶ 96), causing the video of Mr. Johnson "to go viral and reach widespread prominence on the internet" (*id.*, Page ID # 3 ¶ 8; *see also id.*, Page ID # 15, 17, 23 ¶¶ 81, 83, 92), purportedly resulting in Mr. Johnson's termination (*id.*, Page ID # 3, 25-26 ¶¶ 9, 95-97) and causing Plaintiffs to suffer emotional distress (*id.*, Page ID # 27-28 ¶¶ 102-105).

The District Court also correctly determined that Tennessee was not the "focal point" of Ms. Griffin's tweets. (Dismissal Order, R. 32, Page ID # 244) The "focal point" of Ms. Griffin's tweets was not Tennessee *per se*, but rather Mr. Johnson's

interaction with teenagers taking pictures on prom night. That incident happened to occur in Tennessee, but it could have happened anywhere in the country. To the extent that Ms. Griffin's tweets may be considered contacts with Tennessee merely because they mentioned Tennessee or its residents, such contacts were merely "'fortuitous'" and "'attenuated'" because that is where Plaintiffs "'chose to be.'" *Blessing*, 988 F.3d at 907 (quoting *Burger King*, 471 U.S. at 475 and *Walden*, 571 U.S. at 290).

The District Court correctly concluded that Plaintiffs failed to establish that Ms. Griffin specifically directed her tweets at Tennessee readers or that she "posted her tweets hoping to reach Tennessee specifically as opposed to her two million Twitter followers generally." (Dismissal Order, R. 32, Page ID # 243-44 (citing *Blessing*, 988 F.3d at 906))

### B. Plaintiffs Failed to Establish That Ms. Griffin Specifically Targeted the State of Tennessee With Her Tweets.

Recognizing that social media posts directed to a national audience are an insufficient basis to establish personal jurisdiction, Plaintiffs strain to establish that Ms. Griffin "specifically targeted" her tweets at Tennessee, Plaintiffs, or other Tennesseans. (Brief of Plaintiffs-Appellants ("App. Br.") at 13-18) However, the texts say what they say, and regardless of how Plaintiffs characterize those texts, it is clear they were directed to Ms. Griffin's two million Twitter "followers and the public at large." (Compl., R. 1, Page ID # 26 ¶ 96)

Plaintiffs maintain that Ms. Griffin "specifically directed" her tweets at Tennessee because (1) two of the tweets reference Tennessee, (2) two of her tweets were direct communications with Tennessee residents, and (3) Ms. Griffin "had specific knowledge that the Johnsons resided in Tennessee." (App. Br. at 13-14) These factors, alone or in combination, fail to establish that Ms. Griffin directed her tweets at Tennessee as opposed to a nationwide audience.

First, that Ms. Griffin specifically referenced Tennessee in her tweets "does not create the type of substantial connection between [Ms. Griffin] and [Tennessee] necessary to confer specific personal jurisdiction." *Johnson v. Arden,* 614 F.3d 785, 797 (8th Cir. 2010); *see also Gorman v. Jacobs*, 597 F.Supp.2d 541, 549 (E.D. Pa. 2009) ("A statement found on the Internet that simply mentions the forum state and the plaintiff's relation to it, without some other indication that the forum was the intended target of the statement, cannot suffice to establish personal jurisdiction over the statement's author."). In *Blessing*, the tweets at issue referenced the city of Covington, Kentucky, where the plaintiffs attended school and likely resided. 988 F.3d at 892 ("These are scary faces, indeed. #CovingtonShame").

Second, that Ms. Griffin responded to tweets posted by Tennessee residents Mr. Geittmann and VisuWell is of no moment. Ms. Griffin's responsive tweets are not actionable, nor do they give rise to Plaintiffs' claims, all of which are predicated on Ms. Griffin's first tweet, which allegedly caused the video of Mr. Johnson "to go

viral" (Compl., R. 1, Page ID # 3 ¶ 8, *see also id*., Page ID # 17, 23, 25 ¶¶ 83, 92, 95), Mr. Johnson to be terminated (*id*., Page ID # 3, 25-26 ¶¶ 9, 95-97), and Plaintiffs to suffer emotional distress (*id.*, Page ID # 27-28 ¶¶ 102-105).  *See, e.g., Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1119 (6th Cir. 1994) (noting that the "quality" of the defendant's contacts with the forum determines whether they constitute purposeful availment).  Moreover, [t]he 'minimum contacts' analysis depends on the defendant's contact with the forum, 'not the defendant's contacts with persons who reside there.'"  *Blessing*, 988 F.3d at 904 (quoting *Walden*, 571 U.S. at 285); *see also Walden*, 571 U.S. at 284 ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.").

Third, Plaintiffs' focus on Ms. Griffin's "actual knowledge" that Plaintiffs reside in Tennessee "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis."  *Walden*, 571 U.S. at 289; *see also Neogen Corp. v. Vicam*, No. 5:96-cv-138, 1997 WL 481021, at *5 (W.D. Mich. Feb. 20, 1997) ("If a defendant may be brought within the jurisdiction of the court simply by knowledge of where plaintiff resides at the time a tortious act is committed, there can be little remaining meaning to the requirement of purposeful conduct or of 'substantial connection' to the forum."); *Gorman*, 597 F. Supp. 2d at 548 ("Simply (a) knowing that the plaintiff is in the forum state, (b) posting negative statements

about the plaintiff's forum-related activities, and (c) referring to the forum in one's writing will not suffice to satisfy the *Calder* effects test.") (citing *Young*, 315 F.3d at 264).

Next, Plaintiffs maintain that Ms. Griffin "specifically directed" her tweets at Tennessee because her tweets "targeted" Mr. Johnson. (App. Br. at 14-15)  Plaintiffs concede that any purportedly intentional targeting of, and subsequent harm to the plaintiff is insufficient to establish jurisdiction over the defendant.    (*Id.*) Nonetheless, without citation to any authority, Plaintiffs boldly proclaim that the fact that Plaintiffs are residents of Tennessee "is of substantial weight in assessing the fairness of personal jurisdiction."  (*Id.* at 15 (citing nothing))  Even if Plaintiffs' theory had any precedential support, the only additional basis offered by Plaintiffs to conclude that Ms. Griffin specifically directed her tweets to Tennessee as opposed to her Twitter followers generally is a fictitious description of her tweets as a "scheme" to "orchestrat[e] Johnson's demise" followed by a conclusory assertion that Ms. Griffin's "involvement with Tennessee is direct, repeated, and substantial." (*Id.* at 16)  Regardless of Plaintiffs' hyperbolic characterization of Ms. Griffin's tweets, it is clear that they were directed to her two million Twitter "followers and the public" (Compl., R. 1, Page ID # 2 ¶ 6) rather than Tennessee specifically.  *See, e.g., Blessing*, 988 F.3d at 906 (rejecting the plaintiffs' argument that the defendants "deliberately directed their message to a Kentucky audience" merely because their

tweets "urg[ed] people to identify and shame the students in Kentucky and contact their school located in Kentucky") (internal quotation marks, alteration, and citation omitted).

Finally, Plaintiffs maintain, incorrectly, that the District Court should have accepted as true the Complaint's allegations that Ms. Griffin "specifically targeted Tennessee" with her tweets.  (App. Br. at 18)  Contrary to Plaintiffs' contention, neither the District Court nor this Court is required to accept as true Plaintiffs' conclusory, unsupported allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (holding courts need not accept as true legal conclusions) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Whether Ms. Griffin's tweets were "specifically directed" to Tennessee is a legal question for the Court based on the face of the texts.  Not only do the texts themselves not support Plaintiffs' baseless allegation, Plaintiffs' (mis)characterization of Ms. Griffin's tweets is contradicted by the Complaint's allegations that Ms. Griffin directed her tweets to her two million Twitter "followers and the public at large."  (Compl., R. 1, Page ID # 26 ¶ 96) Similarly, the suggestion that the District Court should have *sua sponte* taken judicial notice that "thousands" of Ms. Griffin's two million Twitter followers reside in Tennessee (App. Br. at 18 n.2) must be rejected.  *See Blessing*, 988 F.3d at 906 ("And the complaints do not allege that either defendant has any Twitter followers in Kentucky or that anyone in Kentucky actually read the tweets.").

21

**C. The District Court Properly Applied Relevant Authority.**

There is no support for Plaintiffs' accusations that the District Court "misconstrued" and "ignored relevant judicial precedent." (App. Br. at 19-24)  To the contrary, the District Court faithfully applied relevant case law — including this Court's recent decision in *Blessing* — to Plaintiffs' factual allegations and arguments.  Significantly, Plaintiffs failed to cite in the District Court or on appeal even a single case holding that merely tweeting commentary about a forum resident's forum-based activities subjects the poster to personal jurisdiction in the forum.

Plaintiffs do not actually maintain that the District Court "misconstrued" the Supreme Court's decision in *Walden v. Fiore*, but instead seek to distinguish it. Plaintiffs note that the defendant in *Walden* "had not made 'physical entry' into [the forum state]," whereas Plaintiffs allege that "at least twice Griffin entered Tennessee to put on live performances." (App. Br. at 26)  However, Ms. Griffin's distant and isolated trips to Tennessee are woefully insufficient to establish general jurisdiction and are of no jurisdictional relevance to the specific jurisdiction inquiry.  *See, e.g., Bristol-Myers Squibb Co. v. Superior Ct. of Cal.,* 582 U.S. 255, 264-265 (2017) (holding specific jurisdiction is lacking if there is no connection between a defendant's forum activities and plaintiff's claims); *Int'l Shoe*, 326 U.S. at 317 (recognizing that "single or isolated" acts within the forum are insufficient to support

personal jurisdiction with respect to matters unrelated to those acts); *Binion v. O'Neal*, 95 F.Supp.3d at 1061 (rejecting argument that defendant's performances at local theaters and other business connections to forum established jurisdiction because plaintiff's "cause of action is independent of any such business connection").

Similarly unavailing is Plaintiffs' contention that, unlike the defendant in *Walden* who "merely injure[d] a person who it turns out is a resident of Tennessee," Ms. Griffin purportedly "direct[ed] her tweets to people and a business in Tennessee" and "directly and intentionally caused Mr. Johnson to lose his job in Tennessee." (Appellants' Br. at 21) As a threshold point, Plaintiffs inaccurately describe the facts in *Walden*, as it was similarly alleged there that the defendant knew of plaintiffs' "strong forum connections" and caused them to suffer "foreseeable harm" in the forum. *Walden*, 571 U.S. at 289. In any event, Plaintiffs' jurisdictional analysis improperly focuses on Plaintiffs' connections to Tennessee, when in reality "none of [Ms. Griffin's] challenged conduct had anything to do with [Tennessee] itself." *Walden*, 571 U.S. at 289. Ms. Griffin's only connection to Tennessee is the happenstance that Plaintiffs live in that state, and *Walden* makes clear that this is insufficient to allow her to be sued in Tennessee.

Plaintiffs similarly attempt to distinguish this Court's decision in *Blessing*, arguing that there, Ms. Griffin never "contacted anyone" in Kentucky, whereas here,

Ms. Griffin "tweeted directly" to Tennessee residents Jacob Geittmann and VisuWell. (App. Br. at 22)[3] However, this distinction makes no difference. While Ms. Griffin exchanged tweets with Mr. Geittmann and VisuWell, her responsive tweets are not actionable nor do they give rise to Plaintiffs' claims, which are predicated on Ms. Griffin's first tweet, which allegedly caused the video of Mr. Johnson "to go viral" (Compl., R. 1, Page ID # 3 ¶ 8; *see also id.*, Page ID # 17, 23, 25 ¶¶ 83, 92, 95), caused Mr. Johnson to be terminated from VisuWell (*id.*, Page ID # 3, 25-26¶¶ 9, 95-97), and caused Plaintiffs to suffer emotional distress (*id.*, Page ID # 27-28 ¶¶ 102-105) Moreover, purposeful availment of a forum state is not established by "the defendant's contacts with persons who reside there.'" *Blessing*, 988 F.3d at 904 (quoting *Walden*, 571 U.S. at 285).

Plaintiffs also seek to distinguish *Blessing* on the grounds that the challenged tweets in that case concerned a controversy in Washington, D.C., not the forum state, whereas Ms. Griffin's tweets at issue here concerned a confrontation in Tennessee. (App. Br. at 22) However, *Blessing* establishes that the challenged communications must be "specifically directed at the forum state," 988 F.3d at 905, and the fact that Ms. Griffin's tweets concerned an incident of national interest that happened to

---

[3]    Plaintiffs also claim that Ms. Griffin "tweeted directly at Mr. Johnson" (App. Br. at 22), but this assertion is belied by the tweets themselves and the Complaint's allegations. While the tweets concerned Mr. Johnson, they were not directed at him but rather to Ms. Griffin's two million Twitter "followers and the public at large[.]" (Compl., R. 1, Page ID # 25-26 ¶ 96)

occur in Tennessee is insufficient to establish that the tweets were directed at Tennessee specifically as opposed to Ms. Griffin's Twitter followers generally. *See, e.g., Johnson*, 614 F.3d at 796 (holding defendant's social media postings accusing plaintiffs of killing and torturing cats and operating a "kitten mill" in Unionville, Missouri did not subject defendant to jurisdiction in Missouri); *Young*, 315 F.3d at 258-59 (holding Connecticut-based newspapers "did not manifest an intent to aim their websites or the posted articles at a Virginia audience," even though the articles concerned a Virginia prison warden and his conduct at a Virginia prison). The altercation between Mr. Johnson and the teenagers, while it happened to take place in Tennessee, could have occurred anywhere in the country.

Finally, Plaintiffs complain the District Court failed to cite *Calder v. Jones*, 465 U.S. 783 (1984), which, according to Plaintiffs, is the "most relevant judicial precedent for the case at bar." (App. Br. at 23)  Plaintiffs' suggestion that "[t]his case is on all fours with the requirements of *Calder*" (*id.* at 24) ignores the critical distinguishing facts of that case as well as the narrowed application of *Calder* by the Supreme Court and the Sixth Circuit.

First, *Calder* is inapposite. In that case, entertainer Shirley Jones brought an action in California against the out-of-state author and editor of an allegedly defamatory *National Enquirer* article concerning the unprofessional activities of Ms. Jones while working in California. *Id.*, 465 U.S. at 788-89. Significantly, the

*National Enquirer* had its largest circulation — almost twice the level of the next highest state — in California, the defendants "rel[ied] on phone calls to sources in California for the information contained in the article," and the defendants called the plaintiff's home and read a draft of the article to her husband "so as to elicit his comments." *Calder*, 465 U.S. at 785-86. The Supreme Court concluded that "California is the focal point both of the story and of the harm suffered," and held that jurisdiction over defendants was proper because the defendants' intentional actions were "expressly aimed" at California and they knew the "brunt of the harm" would be felt there. *Id.* at 788-89.

Here, in significant contrast, Ms. Griffin posted three isolated tweets on social media addressed to her two million Twitter "followers and the public at large." (Compl., R. 1, Page ID # 25-26 ¶ 96) Ms. Griffin neither relied on any Tennessee sources for her tweets nor contacted Tennessee residents to "elicit [their] comments" regarding the tweets. *Calder*, 465 U.S. at 786. The focal point of Ms. Griffin's tweets was not Tennessee, but rather the incident between Mr. Johnson and the teenagers dressed for a prom. "Simply (a) knowing that the plaintiff is in the forum state, (b) posting negative statements about the plaintiff's forum-related activities, and (c) referring to the forum in one's writing will not suffice to satisfy the *Calder* effects test." *Gorman*, 597 F.Supp.2d at 548 (citing *Young*, 315 F.3d at 264).

Second, Plaintiffs fail to acknowledge that the Supreme Court and this Court have narrowly applied *Calder*. In *Walden*, the Supreme Court clarified that "mere injury to a forum resident is not a sufficient connection to the forum." *Walden*, 571 U.S. at 290; *see also id.* at 287 (reviewing the contacts the *Calder* defendants had created with California and concluding they were "ample"). The *Walden* court also emphasized that it was the "reputation-based effects of the alleged libel [that] connected the defendants to California" and that the "strength of that connection was largely a function of the nature of the libel tort." *Id.* at 287. Thus, *Calder* applies only when "the defendant committed defamation," which Plaintiffs do not and cannot allege here. *Bd. of Forensic Document Examiners, Inc. v. Am. Bar Assoc.*, No. 16-cv-2641, 2017 WL 549031, at *9 (W.D. Tenn. Feb. 9, 2017).

Similarly, the Sixth Circuit has held that "the mere allegation of intentional tortious conduct which has injured a forum resident does not, by itself, always satisfy the purposeful availment prong." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 552 (6th Cir. 2007). Moreover, the *Blessing* Court analyzed the facts and holding of *Calder*, noting that the plaintiffs, like Plaintiffs here, "do not point to a single case in which a court extended personal jurisdiction based on a defendant's allegedly tortious postings on social media." *Blessing*, 988 F.3d at 905. *Calder* is inapplicable and, in any event, provides no support for Plaintiffs' arguments.

This case presents no unique or material facts that would allow the exercise of personal jurisdiction over Ms. Griffin consistent with due process based on her social media commentary. Accordingly, the District Court's dismissal of the Complaint should be affirmed.

## POINT II

### ALTERNATIVELY, THE COMPLAINT IS SUBJECT TO DISMISSAL UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM

#### A. The Complaint Fails to Satisfy Rule 8's Pleading Requirements.

In addition to moving to dismiss based on lack of personal jurisdiction, Ms. Griffin sought dismissal pursuant to FRCP 12(b)(6) for failure to state a claim. (Motion to Dismiss, R. 18, Page ID # 138)  The District Court did not reach this ground for dismissal, which constitutes an alternative basis to affirm the Dismissal Order.[4]

The purpose of a motion to dismiss is to enable a defendant to challenge the legal sufficiency of a complaint. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003). This is especially important when dealing with fundamental constitutional interests such as the First Amendment, as in this case, where the mere filing of a lawsuit imposes a chilling effect on speech. *New York Times Co. v.*

---

[4] "A decision below must be affirmed if correct for any reason, including a reason not considered by the lower court." *Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214, 216 (6th Cir. 1985) (citing *J. E. Riley Inv. Co. v. Commissioner*, 311 U.S. 55, 59 (1940)); *see also Murphy v. Nat'l City Bank*, 560 F.3d 530, 535 (6th Cir. 2009) ("Appellate courts may affirm on alternative grounds supported by the record.").

*Sullivan*, 376 U.S. 254, 278 (1964).  To survive a motion to dismiss, a complaint "must allege facts that, if accepted as true, are sufficient 'to raise a right to relief above the speculative level,' and to state a claim for relief that is plausible on its face."  *Hensley Mfg. v. Propride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 678 (internal citations and quotation marks omitted).

While the Court should accept "well-pleaded" facts as true in determining whether a facially plausible claim exists, it "need not 'accept as true a legal conclusion couched as a factual allegation.'" *Hensley Mfg.*, 579 F.3d at 609 (quoting *Twombly*, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678. Such conclusory statements should therefore be excluded from the Court's analysis before it determines whether there are sufficient remaining facts to support a facially plausible claim for relief.  Because the pleading standard for stating a viable cause of action has not been met in this case (*see Iqbal*, 556 U.S. at 684), the Court should affirm dismissal of the Complaint.

**B.** **Ms. Griffin's Speech in the "Modern Public Square" Did Not "Dox" Plaintiffs and Cannot Be Punished as a Criminal Violation.**

In assessing Ms. Griffin's tweets it is helpful to distinguish between what they *do not* say, and what they *do* say. Starting with the former, they did not amount to "dox[ing]" or a "campaign to harass and stalk" Plaintiffs.[5] (Compl., R. 1, Page ID # 2 ¶ 6) Ms. Griffin did not publish their "personally identifiable information" (*id.* ¶ 5), let alone threaten, or urge violence against them, or ask anyone to break the law. Her speech was not fraudulent, misleading, or commercial, or anywhere close to any type of expression potentially actionable under tort law.

---

[5] A flawed premise pervades the Complaint: although not denominated as causes of action, Plaintiffs allege that Ms. Griffin's commentary violated Tennessee's criminal harassment statute (Tenn. Code Ann. § 39-17-308) and criminal stalking statute (Tenn. Code Ann. § 39-17-315). (Compl., R. 1, Page ID # 28 ¶ 105) However, the repetition of these allegations throughout the Complaint to prop up its pastiche of tort claims cannot obscure the actual text of Ms. Griffin's comments, which are neither harassing, threatening, nor menacing — not even close. If accepted, this crude alchemy "would collide with the First Amendment" by criminalizing broad swaths of protected speech. *See United States v. Yung*, 37 F.4th 70, 78 (3d Cir. 2022) ("The First Amendment protects at least some speech that persistently annoys someone and makes him fearful or timid."); *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 204 (3d Cir. 2001) (Alito, J.) ("There is no categorical 'harassment exception' to the First Amendment's free speech clause."); *Church of the Am. Knights of the Ku Klux Klan v. City of Erie*, 99 F.Supp.2d 583, 591 (W.D. Pa. 2000) (striking down statute which prohibited wearing a mask "with the intent to intimidate, threaten, abuse or harass any other person"); *see Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243, 264 (3d Cir. 2002) ("'Harassment,' when targeted on the basis of its expressive content, encompasses speech within the area protected by the First Amendment.").

Nor does the Complaint come remotely near supporting a criminal stalking allegation, which requires, *inter alia*, a "willful course of conduct involving repeated or continuing harassment of another individual." Tenn. Code Ann. § 39-17-315(a)(4). Plaintiffs have alleged no such "course of conduct" by Ms. Griffin. Rather, the Complaint alleges only that she made three tweets, a few lines each, directed to the public, over a time span of less than 24 hours addressing the incident that occurred at the Harpeth Hotel and Mr. Johnson's Board member status. Ms. Griffin's topical, spontaneous, and limited comments hardly rise to the level of a continuous and repetitive "pattern of conduct" envisioned by the statute. Tenn. Code Ann. § 39-17-315(a)(1).

Turning to what Ms. Griffin *did* say, she expressed her opinion that Sam Johnson's public conduct deserved criticism and merited his removal from VisuWell's Board. Her tweets were communicative — an invitation, and perhaps an exhortation, to condemn his behavior in the "modern public square" of social media. *Packingham v. North Carolina*, 582 U.S. 98, 107 (2017); *see also id*. at 109 (acknowledging that the exchange of information on social media is "integral to the fabric of our modern society and culture" and merits full constitutional protection). It is consistent with democratic public discourse, and protected under the First Amendment, to express the belief that another citizen's actions should make him "online famous." While Plaintiffs are entitled to disagree with that viewpoint, and even to find it offensive, they are not entitled to maintain a lawsuit over it. The whole point of the First Amendment is to leave these social debates to the marketplace of ideas; the nation's courts do not sit to adjudicate such questions. Ms. Griffin's speech may have caused Plaintiffs distress or aroused their contempt. However, the Constitution does not allow her tweets to be exposed to tort liability for those reasons. "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989). Indeed, "the point of all speech protection . . . is to shield just those

choices of content that in someone's eyes are misguided, or even hurtful." *Hurley v. Irish-Amer. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 574 (1995).

## C. <u>The First Amendment Precludes Civil Liability Based on Ms. Griffin's Tweets.</u>

The First Amendment reflects our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). The right to speak on matters of public concern "is more than self-expression; it is the essence of self-government." *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 759 (1985) (quotation marks and citations omitted). Courts protect this type of speech because "freedom to discuss public affairs . . . is unquestionably . . . the kind of speech the First Amendment was primarily designed to keep within the area of free discussion." *Sullivan*, 376 U.S. at 296-97; *see also Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988) (First Amendment promotes the "free flow of ideas and opinions on matters of public interest").

While the state has an interest in protecting its citizens' commercial relationships through tort law, "the presence of activity protected by the First Amendment imposes restraints on the grounds that may give rise to damages liability and on the persons who may be held accountable for those damages." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916-17 (1982); *see also Coplin v. Fairfield Pub. Access Television Comm.*, 111 F.3d 1395, 1401 n.2 (8th Cir. 1997) ("As the

Supreme Court has made clear, states may not regulate speech merely because the speech is defined as a state-law tort."); *Higgins v. Ky. Sports Radio, LLC*, No. 5:18-cv-043, 2019 U.S. Dist. LEXIS 45535, at *27 (E.D. Ky. Mar. 20, 2019) ("As a general legal maxim, individuals may not use tort actions to abridge and chill the freedom of speech protected by the First Amendment."), *aff'd*, 951 F.3d 728 (6th Cir. 2020).

### 1. Ms. Griffin's Tweets Merit "Special Protection."

Ms. Griffin's tweets unquestionably addressed "a matter of public concern, [and are therefore] entitled to 'special protection' under the First Amendment." *Snyder v. Phelps*, 562 U.S. at 458. Plaintiffs try to circumvent that protection by positing a potpourri of tort claims (rather than a defamation claim), all of which are precluded by both the First Amendment and the Tennessee Constitution of 1796. Indeed, this Court's decision in a case involving circumstances far more egregious than those alleged here underscores the First Amendment's strict limitations on non-defamation tort claims premised on speech concerning public matters.

In *Higgins v. Kentucky Sports Radio*, a radio show relentlessly criticized a referee (Higgins) for his game-ending call during a college basketball game and encouraged listeners to leave bad reviews on the webpage of Higgins's Weatherguard roofing business. 951 F.3d at 731-33. Higgins received thousands of angry calls, tweets, and online reviews, which dramatically impacted his business

and required a bodyguard to accompany him at the next game he refereed.[6] *Id*. at

733.    Statements repeated on the air included allegations that Higgins had

propositioned a 13-year-old boy, "takes money under the table from the mafia in

Vegas," and employed "illegal labor, substandard materials, and shady accounting

practices." *Id*.  Higgins and his wife[7] — who, like Plaintiffs here, did not assert a

defamation claim (951 F.3d at 739) — brought multiple tort claims stemming from

that on-air commentary and the adverse response it encouraged, including claims for

tortious interference with a business relationship, harassing communications,

intentional infliction of emotional distress, invasion of privacy, and negligence.[8] *Id*.

at 733.  The district court granted a Rule 12 motion to dismiss those claims in their

---

[6]   The district court's description underscored the gravity of the viral response confronting
Higgins:

> Some angry fans and observers incessantly contacted the Plaintiffs directly,
> resulting in thousands of calls to Mr. Higgins's home and business within a span of
> a few days. Additionally, many individuals posted false reviews of Mr. Higgins's
> business online and posted reviews about Higgins on social media ranging from
> satirical to nasty. And they piled on, some individuals even contacted Mr. Higgins's
> family and made death threats.

2019 U.S. Dist. LEXIS 45535, at *2. As a result, law enforcement authorities "added patrols
around the Higgins family home and Weatherguard employees were told not to work for
several days." *Id*. at *15.

[7]   As part of the social media tsunami that engulfed the Higgins family, "Ms. Higgins began
receiving messages pertaining to Mr. Higgins's officiating performance on her personal
Facebook Messenger account." *Higgins*, 2019 U.S. Dist. LEXIS 45535, at *15.

[8]   Notably, the *Higgins* plaintiffs originally filed their lawsuit in the District of Nebraska, which
transferred venue to the Eastern District of Kentucky after ruling that the exercise of personal
jurisdiction over the defendants would violate due process, notwithstanding the Complaint's
allegations that "[t]he plaintiffs suffered harm in Nebraska, and it was reasonably foreseeable
that the harm was likely to be suffered in Nebraska." *Higgins v. Ky. Sports Radio LLC*, 2018
U.S. Dist. LEXIS 1959, at *17 (D. Neb. Jan. 5, 2018).

entirety, and this Court affirmed, holding that the challenged statements addressed a matter of public concern and were therefore protected by the First Amendment regardless of how the claims were styled:

> Higgins raises seven causes of action, but they all reduce to a single theory of liability. No matter the label, Higgins claims that Kentucky Sports Radio owes him money damages for its unfavorable statements about him and his roofing business after the North Carolina-Kentucky game. The First Amendment bars the theory and the claims on this record.

*Id*.

The same can certainly be said here about Plaintiffs' indiscriminate medley of tort theories. Higgins had no actionable claim for the reputational harm, lost revenues, or physical threats the radio host indisputably "triggered" on his say-so, and Plaintiffs have none, either.

### D. <u>The Complaint's Tortious Interference Claims Are Not Invisible to the First Amendment and Cannot, as a Matter of Law, Be an Actionable "Wrong."</u>

Whether based on Tennessee common or statutory law, the Complaint's causes of action sounding in tortious interference with employment and/or contractual relations asserted on behalf of Mr. Johnson (Counts 1, 2, and 3) are unified by the requirement that the alleged interference must have an improper motive or means. *See, e.g., Renasant Bank v. Ericson,* 801 F.Supp.2d 690, 704 (M.D. Tenn. 2011). That element cannot be satisfied here, where, as discussed

above, Plaintiffs' claims all arise from Ms. Griffin's constitutionally protected speech.

The decision in *Owens v. Lead Stories, LLC*, 2021 WL 3076686 (Del. Super. Ct. July 20, 2021), *aff'd*, 273 A.3d 275 (Table) (Del. 2022), is instructive on this point.[9]  The plaintiff in *Owens*, a conservative political activist and social media commentator, sued *USA Today* for publishing a "fact-check" article that disputed her claims in a Facebook post questioning the severity of the COVID-19 pandemic and the propriety of the federal government's response thereto.  *Id*. at *30.  The court dismissed the complaint's tortious interference and unfair competition claims, emphasizing that a tort claim "cannot survive if the claim is premised solely on statements that are protected by the First Amendment because the exercise of constitutionally protected speech cannot be an 'improper' or 'wrongful' action."  *Id*. at *47-48 (footnote omitted).  So too here, where Mr. Johnson's attempt to challenge "a decision to publish constitutionally protected speech" through reliance on claims alleging tortious interference is "not consistent with First Amendment principles."  *Id*. at *50-51 (footnote omitted) (granting motion to dismiss tortious interference with contract, tortious interference with business relations, and unfair competition claims).

---

[9]  Mr. and Mrs. Johnson's counsel on this appeal represented plaintiff Candace Owens in the Delaware case.

Consistent with the ruling in *Owens*, and contrary to the Complaint's allegations, courts have repeatedly invoked the First Amendment to dismiss tortious inference claims based on protected speech because "such lawful activity is insufficient to establish the required element of improper conduct." *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 858 (10th Cir. 1999); *Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 973 (3d Cir. 1985) ("Since neither [defendant] can be found liable for defamation, the intentional interference with contract relations count is not actionable because there is no basis for finding that their actions were 'improper'"); *Beverly Hills Foodland, Inc. v. United Food & Commercial Workers Union, Local 655*, 39 F.3d 191, 196 (8th Cir. 1994) (constitutional requirements for defamation "must equally be met for a tortious interference claim based on the same conduct or statements;" otherwise "a plaintiff may . . . avoid the protection afforded by the Constitution . . . merely by the use of creative pleading"); *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1058 (9th Cir. 1990) (affirming dismissal of tortious interference claim because publication of allegedly actionable statements was not "wrongful").

It cannot reasonably be disputed that Ms. Griffin's comments regarding a controversial and highly publicized incident were "constitutionally protected activity" that "serve[d] a legitimate purpose." Tenn. Code Ann. § 39-17-315(a)(3). The Complaint's allegations make clear that Ms. Griffin took umbrage at the Video

Clip depicting Mr. Johnson's actions at the Harpeth Hotel. As a result, she chose to express her opinion and condemn his behavior. In a democracy, seeking to identify, debate — and even "shame" (*see, e.g.*, Compl., R. 1, Page ID # 2-3 ¶¶ 6, 29) — those with whom one disagrees serves a legitimate purpose and is protected under the First Amendment. *Wagda v. Town of Danville*, No. 16-cv-488, 2016 WL 6160160, at *5 (N.D. Cal. Oct. 24, 2016) ("'shaming' . . . is not, however, cognizable as a First Amendment violation"); *Higgins*, 2019 U.S. Dist. LEXIS 45535, at *27 ("While the First Amendment protects speech that is positive, agreeable, and uplifting, the First Amendment's defense of free speech also extends to speech that is distressful, hurtful, offensive, and nasty."). Thus, allowing this case to proceed past the pleading stage would "constitute a forbidden intrusion on the field of free expression." *Sullivan*, 376 U.S. at 285.

In any event, Plaintiffs' speculation about Ms. Griffin's alleged improper motives (Compl., R. 1, Page ID # 29-31 ¶¶ 115, 123, 131) does not support the Complaint's tortious interference claims.[10] As the Complaint itself acknowledges,

---

[10] The Complaint's conclusory allegations that Ms. Griffin was aware of Mr. Johnson's employment contract with VisuWell (Compl., R. 1, Page ID # 30-31 ¶¶ 122, 130) and, through her tweets, intentionally procured its breach (*id.* ¶¶ 123, 131) are flatly contradicted by allegations in the complaint that Mr. Johnson filed in the United States District Court for the Middle District of Tennessee (Nashville Division) against UH Cleveland, of which this Court may take judicial notice. *Johnson v. Univ. Hosp. Health Sys., Inc.*, Case No. 3:21-cv-00656 (M.D. Tenn. Aug. 24, 2021) [Dkt. No. 1]. *See Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980) ("We take judicial notice that this appeal arises from the same facts that formed the basis for the judgment in [related state court proceeding]."); *Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969) ("Federal courts may take judicial notice of

VisuWell tweeted about the termination of Mr. Johnson's employment *before* Ms. Griffin inquired on Twitter about his status on the Board of Directors. (*Id.* ¶¶ 88-91) The attribution of an improper motive to Ms. Griffin ignores that chronology and fails to divest her tweets of constitutional protection. *Jefferson Cnty. Sch. Dist.*, 175 F.3d at 858 ("To allow a plaintiff to establish a tort claim by proving merely that a particular motive accompanied protected speech . . . might well inhibit the robust debate that the First Amendment seeks to protect.").

### E. **The Complaint's IIED Claim Is Prohibited by the First Amendment.**

The Complaint's fourth cause of action sounding in intentional infliction of emotional distress ("IIED") cannot circumvent the constitutional privileges and defenses delineated above that immunize Ms. Griffin's tweets from tort liability. *Hustler Magazine v. Falwell*, 485 U.S. at 55-56. In order to survive a motion to dismiss, Plaintiffs must plead facts supporting each element of the IIED tort. *See Desoto v. Bd. of Parks & Rec.*, 64 F.Supp.3d 1070, 1096-97 (M.D. Tenn. 2014). The elements of the IIED tort are whether the defendant's conduct was "intentional or

---

proceedings in other courts of record.") (collecting cases), *cert denied*, 397 U.S. 1065 (1970); *United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012) ("[J]udicial notice may be taken at any stage of the proceedings, whether in the trial court or on appeal.") (quoting Fed. R. Evid. 201(f), advisory comm. note). That complaint, which asserts the same three tortious interference claims that Mr. Johnson has asserted against Ms. Griffin, alleges that on April 26, 2021, UH Cleveland representatives called VisuWell's Chairman and "verbally demanded that Mr. Johnson be fired," upon threat of pulling the Hospital's business from VisuWell — an "ultimatum" that was the "proximate cause" of Mr. Johnson's termination: "But for UH Cleveland's interference, Mr. Johnson would not have been fired." *See* Dkt. No. 1, ¶¶ 72-74.

reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012). Recognizing that the tort requires "severe mental injury," it is for the Court to determine in the first instance whether a defendant's conduct may reasonably be regarded as so extreme or outrageous as to permit recovery. *Swallows v. Western Elect. Co.*, 543 S.W.2d 581, 583 (Tenn. 1976) (granting motion to dismiss). Liability for IIED "does not extend to mere insults, indignities, threats, annoyances, petty oppression or other trivialities." *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997) (reversing denial of summary judgment) (internal quotation marks and citation omitted).

The Complaint essentially objects to Ms. Griffin's tweets calling out Mr. Johnson for accosting a high school student who was taking prom pictures in the courtyard of the Harpeth Hotel. Her speech, by definition, cannot be considered "outrageous." As discussed above, it is entitled to the highest level of constitutional protection. In *Hustler*, in considering the emotional distress claims asserted by Reverend Jerry Falwell regarding an ad parody, the United States Supreme Court recognized that even extremely caustic and indecent expression has long been tolerated and encouraged by "civilized society" and is protected under the First Amendment. 485 U.S. at 56-57. Ms. Griffin's exercise of her constitutionally protected right of free expression in this instance is clearly not the type of

intentionally outrageous activity required in Tennessee to award damages for emotional distress.

In addition to the above infirmities, the Complaint fails to recite any facts to support the allegation that Plaintiffs "suffer[ed] severe emotional distress and mental anguish." (Compl., R. 1, Page ID # 32 ¶ 140)  Content merely to parrot this boilerplate element of an IIED claim, Plaintiffs nowhere allege that they had their social affairs or daily activities interrupted or interfered with, received psychiatric counseling or other medical treatment, or even lost any sleep.  Their conclusory averments therefore fail to satisfy the *Iqbal-Twombly* pleading requirements. *See, e.g.*, *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 246-47 (6th Cir. 2012) (holding "'a formulaic recitation of the elements of a cause of action'" does not satisfy *Twombly*'s plausibility standard) (quoting *Twombly*, 550 U.S. at 555).  As pleaded, Plaintiffs' claim that they were emotionally traumatized by the tweets at issue cannot be actionable.  Count 4 should be dismissed.

**F.  The Complaint's Intrusion Upon Seclusion Claim Is a Non-Starter.**

Tennessee has adopted the *Restatement (Second) of Torts* for intrusion upon seclusion claims, allowing liability to attach to a defendant "who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, . . . if the intrusion would be highly offensive to a reasonable person." *Givens v. Mullikin*, 75 S.W.3d 383, 411 (Tenn. 2002) (internal

41

quotation marks and citation omitted, quoting *Restatement (Second) of Torts* § 652B), *superseded on other grounds by statute*, Tenn. Code Ann. § 29-26-121(f).

As these requirements make clear, the Complaint's fifth cause of action, asserted on behalf of Mrs. Johnson, fails as a matter of law. It alleges that Ms. Griffin tweeted "to make Mr. and Mrs. Johnson 'online famous.'" (Compl., R. 1, Page ID # 32 ¶ 144)   Ms. Griffin actually said no such thing, however, as her first tweet solely referenced Mr. Johnson in opining that "it seems like *he's* dying to be online famous." (*Id.*, R. 1, Page ID # 15 ¶ 81 (emphasis supplied); *see also id.* Ex. B, R. 1-2, Page ID # 110-111)   Compounding this deficiency, Mrs. Johnson's marriage to her husband, operation of her business, and residence in Franklin, Tennessee, are matters of public record. *Givens*, 75 S.W.3d at 412 ("Thus, there is no liability for the examination of a public record concerning the plaintiff, or of documents that the plaintiff is required to keep and make available for public inspection.").   Indeed, the case cited in paragraph 143 of the Complaint makes this very point. *Roberts v. Essex Microtel Assocs.*, 46 S.W.3d 205, 210 (Tenn. Ct. App. 2000).   This is hardly the type of information  —  her marital status and hometown  —  that Mrs. Johnson has maintained in private seclusion, and tweeting this information can hardly be said to be highly offensive to a reasonable person.[11]

---

[11]   Owing to First Amendment considerations, courts have strictly construed the "highly offensive" requirement in dismissing seclusion claims even under circumstances involving deceptive practices far removed from Ms. Griffin's tweets here, noting that the "motive to

In a strained attempt to satisfy this requirement, the Complaint alleges the challenged tweets "doxed" Mrs. Johnson. (Compl., R. 1, Page ID # 33-34 ¶¶ 145, 150)  As stated above, however (*see* POINT II.B., *supra*), Ms. Griffin did not expose any of Plaintiffs' personal or private information such as email contacts, cellphone numbers, or bank account or social security numbers, did not disclose their residential street address, and nowhere mentioned Mrs. Johnson's business.  She did not say Plaintiffs should be subject to threats or violence.  She did not ask anyone to target them in their homes, at their workplace, or otherwise disturb their privacy.  No "doxing" happened here.   On their face, the tweets fail the very definition of "doxing" offered by Plaintiffs in the form of posting someone's "personally identifiable information, such as their address and workplace." (Compl., R. 1, Page ID # 2 ¶ 5) Indeed, the only doxing apparent in this case has arguably been committed by Plaintiffs themselves in listing Ms. Griffin's California residential address in a public court filing (*id.*, Page ID # 7 ¶ 35) while ostentatiously vilifying her in that document (*id.*, Page ID # 4-5 ¶¶ 24-31), apparently in the hope of enlisting participants in "America's 'culture wars'" (*id.*, Page ID # 3 ¶ 8) to support their cause.

---

gather news can negate the offensiveness element" of the tort. *Four Navy Seals v. Assoc. Press*, 413 F.Supp.2d 1136, 1147 (S.D. Cal. 2005); *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos.*, 30 F.Supp.2d 1182, 1190 (D. Ariz. 1988) ("the strong societal interest in effective and complete reporting of events" may "justify an intrusion that would otherwise be considered offensive"), *aff'd*, 306 F.3d 806 (9th Cir. 2002).

As with the other counts in the Complaint, Mrs. Johnson may not attempt to avoid the protections of the First Amendment by seeking to hold Ms. Griffin liable under an invasion of privacy theory for public statements regarding matters of public concern.[12] *Higgins*, 2019 U.S. Dist. LEXIS 45535, at *30 (First Amendment bars invasion of privacy claim "when the alleged tortious conduct is speech on a matter of public concern in a public place or forum"). In the final analysis, the Complaint's invasion of privacy claim reduces to the allegation that Ms. Griffin "nam[ed] Mrs. Johnson and her hometown in her first tweet." (Compl., R. 1, Page ID # 33 ¶ 148) To permit recovery on this basis would exponentially increase the potential liability exposure of social media users, and would ultimately "quell open debate and commentary on public events and issues," solely because Plaintiffs were displeased with how they were perceived by others who may hold views different from their own. *Higgins*, 2019 U.S. Dist. LEXIS 45535, at *40-41. Therefore, the Complaint's privacy claim should be dismissed.

---

[12] Notably, in jurisdictions that recognize the seclusion tort, this claim focuses on the manner in which the purportedly private information was obtained, not on the information's publication. *Gleason v. Smolinski*, 2009 WL 2506607, at *7-8 (Conn. Super. Ct. July 20, 2009) ("Publication of private information alone is not legally sufficient to sustain this particular cause of action, which is concerned with the methods used when obtaining private information rather than its subsequent dissemination."); *Pierson v. News Group Publ'ns, Inc.*, 549 F.Supp.635, 640 (S.D. Ga. 1982) (same); *Tagouma v. Investig. Consultant Srvcs., Inc.*, 4 A.3d 170, 174 (Pa. Super. Ct. 2010) (same).

**G. Plaintiffs' Claims Requiring a "Duty" Should Be Dismissed as a Matter of Law.**

The Complaint purports to state two causes of action (Counts 6-*Prima Facie* Tort and 7-Negligence *Per Se*) which, to the extent they exist, require a legal "duty" owed by Ms. Griffin to Plaintiffs. Yet again, these claims are merely an effort to pursue redress for perceived "reputational injury" (Compl., R. 1, Page ID # 34-35 ¶¶ 158, 165) — the province of defamation law — under the rubric of disfavored tort theories and are unavailing.[13]  The Complaint nowhere alleges specific facts that amounted to a breach of some duty supposedly owed to Plaintiffs.

No "*prima facie*" tort claim has been recognized in Tennessee as an independent cause of action,[14] but even assuming its existence the tweets Plaintiffs deem objectionable are both privileged and justified as public affairs commentary protected at the core of the First Amendment. *Higgins*, 2019 U.S. Dist. LEXIS 45535, at *3-4 ("the speech enjoys special protection and the First Amendment

---

[13]  *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 695 (9th Cir. 1998) ("[A] claim for negligent publication is essentially the same as either a claim for misappropriation or for defamation, and . . . the constitutional and statutory principles regarding those standards cannot be circumvented by artful pleading.").

[14]  It does not appear that Tennessee recognizes something called "*prima facie*" tort as a separate cause of action or theory of recovery in a First Amendment case or otherwise.  That phrase arises in connection with contract claims, as distinct from tort claims.  *Cont'l Cas. Co. v. Tyson Foods, Inc.*, No. 1:15-cv-20, 2017 WL 1180252, at *9 n.9 (E.D. Tenn. Nov. 13, 2017) ("a claim for *prima facie* tort exists only if a party breaches a duty which he owes to another independently of [a] contract") (internal quotation marks omitted) (dismissing tort claim and quoting *Calipari v. Powertel, Inc.*, 231 F.Supp.2d 734, 736 (W.D. Tenn. 2002) (noting that plaintiff had put no label on a purported tort claim in what was a contract case)).

45

prevents the Plaintiffs from using tort actions to silence and punish the Defendants for engaging in protected speech").

Nor can Plaintiffs evade the First Amendment's requirements by divining a "standard of care" (Compl., R. 1, Page ID # 34 ¶ 160) from Tennessee's criminal harassment and stalking laws in order to prop up their feeble negligence *per se* claim for the simple and straightforward reason that neither Tenn. Code Ann. § 39-17-308 nor § 39-17-315 authorizes a private cause of action. *Ragland v. F & M Koz, Inc.*, No. 221-cv-02530, 2022 WL 945317, at \*4-5 (W.D. Tenn. Mar. 29, 2022) (granting motion to dismiss because "individuals have no private right of action" under Tenn. Code Ann. § 39-17-308); *Molthan v. Vanderbilt Univ.*, No. 3:17-cv-00706, 2017 WL 1489099, at \*3 (M.D. Tenn. Apr. 26, 2017) (dismissing claims based on state criminal statutes, including § 39-17-308 and § 39-17-315, because "they do not create private causes of action").

## POINT III

## THIS ACTION SHOULD BE DISMISSED, AND MS. GRIFFIN IS ENTITLED TO AN AWARD OF ATTORNEY'S FEES, UNDER THE TPPA

Finally, Ms. Griffin seeks dismissal and fees under the Tennessee Public Participation Act ("TPPA"), Tenn. Code Ann. §§ 20-17-101 *et seq.*  While the District Court correctly dismissed this case for lack of personal jurisdiction, in the alternative Ms. Griffin requests relief under the TPPA in conjunction with her Rule

12(b)(6) motion.[15]  This appeal is without merit and is directly contrary to controlling Sixth Circuit authority in *Blessing* and *Higgins*.  Fees are appropriate.

## CONCLUSION

Based on the foregoing reasons and authority, Defendant-Appellee Kathy Griffin respectfully requests that this Court affirm the Order of the District Court for the Middle District of Tennessee (Nashville Division) or, in the alternative, grant Ms. Griffin's Rule 12(b)(6) motion dismissing the Complaint for failure to state a cause of action, along with an award of appropriate remedies pursuant to the TPPA.

---

[15] Defendant recognizes that two judges in the Middle District of Tennessee have declined to apply the TPPA in federal court under *Erie* principles.  *See Mucerino v. Martin*, No. 3:21-cv-00284, 2021 WL 5585637 (M.D. Tenn. Nov. 30, 2021); *Lampo Grp., LLC v. Paffrath*, No. 3:18-cv-01402, 2019 WL 3305143 (M.D. Tenn. July 23, 2019). However, neither opinion mentioned the Legislature's intent expressly stated in the TPPA: "This chapter is intended to provide an additional substantive remedy to protect the constitutional rights of parties and to supplement any remedies which are otherwise available to those parties under common law, statutory law, or constitutional law or under the Tennessee Rules of Civil Procedure."  *Id*. at 109.  Ms. Griffin preserves this issue to avoid any waiver on appeal.

Dated: June 7, 2023          Respectfully submitted,

*/s/ Michael J. Grygiel, with permission*
Michael J. Grygiel
Cynthia E. Neidl
GREENBERG TRAURIG, LLP
54 State Street, 6th Floor
Albany, New York 12207
(518) 689-1400
grygielm@gtlaw.com
neidlc@gtlaw.com

Adam Siegler
GREENBERG TRAURIG, LLP
1840 Century Park East
Suite 1900
Los Angeles, California 90067
(310) 586-7700
Adam.Siegler@gtlaw.com

*/s/ Robb S. Harvey*
HOLLAND & KNIGHT LLP
Robb S. Harvey
511 Union Street, Suite 2700
Nashville, Tennessee 37219
(615) 244-6380
robb.harvey@khlaw.com

*Attorneys for Defendant-Appellee*
*Kathy Griffin*

48

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I hereby certify that this brief complies with the type-volume limitation in Rule 32(a)(7)(B)(i) because, as counted by the Microsoft Word 2016-word count tool, this brief contains 12,043 words, excluding the parts exempted by Rule 32(a)(7)(B)(iii).  This brief complies with the typeface requirements in Rule 32(a)(5)(A) and the type-style requirements in Rule 32(a)(6) because this brief has been prepared in proportionally spaced 14-point Times New Roman font.

Dated:       June 7, 2023

 */s/ Robb S. Harvey*
Robb S. Harvey

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2023, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

 /s/ Robb S. Harvey

Robb S. Harvey

**ADDENDUM**

**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**

| Docket Number | Document Description | Page ID Number |
|---|---|---|
| 1 | Complaint | 1-36 |
| 1-1 | Exhibit A to Complaint | 95-109 |
| 1-2 | Exhibit B to Complaint | 110-111 |
| 1-3 | Exhibit C to Complaint | 54-55 |
| 1-4 | Exhibit D to Complaint | 56-57 |
| 1-5 | Exhibit E to Complaint | 58-59 |
| 1-6 | Exhibit F to Complaint | 60-62 |
| 1-7 | Exhibit G to Complaint | 63-64 |
| 1-8 | Exhibit H to Complaint | 65-67 |
| 1-9 | Exhibit I to Complaint | 68-69 |
| 1-10 | Exhibit J to Complaint | 70-86 |
| 16 | Notice of Appearance by Robb S. Harvey | 135-136 |
| 18 | Ms. Griffin's Motion to Dismiss Pursuant to FRCP 12(b)(2) and 12(b)(6) | 138-139 |
| 19 | Ms. Griffin's Memorandum of Law in Support of Motion to Dismiss | 140-165 |
| 21 | Motion to Appear Pro Hac Vice | 167-170 |
| 22 | Motion to Appear Pro Hac Vice | 171-174 |
| 23 | Motion to Appear Pro Hac Vice | 175-178 |
| 29 | Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss | 189-214 |
| 30 | Ms. Griffin's Reply Memorandum of Law in Further Support of Motion to Dismiss | 215-226 |
| 31 | Ms. Griffin's Notice of Filing of Supplemental Authority | 227-228 |
| 31-1 | Copy of Supplemental Authority | 229-237 |
| 32 | Memorandum Opinion of the Court | 238-244 |
| 33 | Order Dismissing Case | 245 |
| 34 | Plaintiffs' Notice of Appeal | 246-247 |

*ACTIVE 687895622v5*